[Crim. No. 33987. Second Dist., Div. Four. Apr. 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT PAUL SHELBURNE, Defendant and Appellant.

**COUNSEL**

Glen H. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.\***—Defendant Shelburne has appealed following his conviction of kidnaping for purposes of robbery (Pen. Code, § 209), robbery (Pen. Code, § 211), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)).

We have concluded that the evidence was insufficient to establish that defendant entertained an intent to rob his victim at the time of the original asportation. Hence, we reverse his conviction of kidnaping for purposes of robbery. It is therefore unnecessary to reach the following three contentions raised by defendant: (1) that the prosecutor's conduct in amending the information to charge a violation of Penal Code section 209, rather than section 207, violated defendant's right to due process; (2) that there was insufficient evidence that the movement of the victim substantially increased the risk of harm to him over and above that likely in the crime of robbery itself; and (3) that the court abused its discretion in sentencing defendant to life in prison.

We reach and resolve the assertions of defendant Shelburne that there was insufficient evidence of an intent on his part to rob at the time of the victim's kidnaping, and that he was denied competent counsel.

I

*Summary of the Facts*

The charges against defendant arose out of an incident which began in the early evening of January 10, 1978. At that time, the victim, Randy Gorman, went to visit friends, Rex Gerry and Judy Hofstetter, in Bellflower. When he arrived at the home, Schacter, Hall, and Phipps

---

\*Assigned by the Chairperson of the Judicial Council.

were in the living room. Schacter began demanding $500 that someone owed him, following which he went to the front door and whistled; Rubio and defendant Shelburne then came into the house. Shelburne was carrying a tire iron in his hand, with which he repeatedly struck the palm of his own hand. Schacter continued to demand his $500, and eventually he and Rex Gerry went into a back room and talked. The victim testified that when they came out, they "said I was going with him and they were going to get my motorcycle."

The victim and several of the persons present began to "scuffle" in an effort to get the victim out the door; during this scuffle, the victim was struck on the head with the tire iron wielded by defendant Shelburne. The victim denied that he had ever borrowed money from defendant, or that he owed him any money.

Defendant and four others and the victim drove in two cars to the victim's apartment in La Habra. At the victim's apartment, defendant and the others took and carried away the victim's stereo set, his coin collection, wall clocks, jewelry and other items. Schacter had the victim sign over the pink slip for his motorcycle, although the motorcycle itself was not delivered. The victim also signed a bill of sale for the stereo set, prepared by defendant Shelburne.

The victim, the defendant and others then reentered the cars; the victim was driven to several locations for brief stops, and then all returned to the house in Bellflower. Defendant and the others now demanded entry, and ultimately made their way in by breaking a hole in the front door. In the meantime, the Bellflower residents had called the sheriff's office. The defendant and the other men began carrying things out the front door. As they were taking things from the home, the sheriff's deputies arrived; defendant and the other men were placed under arrest.

## II

### *Insufficiency of the Evidence to Establish an Intent to Rob*

The defendant cites *People v. Tribble* (1971) 4 Cal.3d 826, 832 [94 Cal.Rptr. 613, 484 P.2d 589], for the rule that: "'. . .a robbery during a kidnapping where the intent was formed after the asportation is a rob-

bery and not a kidnapping for purpose of robbery.'" We must determine, therefore, whether there exists sufficient evidence to support the trial judge's conclusion (this being a court trial) that the defendants intended to rob the victim at the time defendant participated in taking the victim from the Bellflower home.

The evidence presented by the People on this issue consists only of the testimony of the victim, described earlier, that defendant and the other men were taking him to get his motorcycle, and the victim's statement that he did not owe Schacter any money. The witness, Judy Hofstetter, testified only that she heard "[j]ust a bunch of arguing about motorcycles, money,..."

However, our inquiry does not end with a determination of whether the *People's* evidence could be deemed substantial support for the judgment (see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 712 [112 Cal.Rptr. 1, 518 P.2d 913]). We must examine the entire record to determine whether a rational trier of fact could have found, beyond a reasonable doubt, that defendant was guilty of that offense. (*Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

The following evidence was offered by the defense on the issue of defendant's intent at the time the victim was taken from the Bellflower house. Phipps testified that in late 1977 he received a large sum of money by way of inheritance; that he lent $500 of that money to the victim, Randy Gorman. Phipps also testified that on January 8 or 9, 1978, he told defendant Shelburne about the outstanding loan; that on January 10, he conveyed the same information to Hall and Rubio. There was testimony from Phipps that Schacter had been present at the time the loan was made.

Cherokee Hall, the mother of Steven Hall, testified that on January 10 Phipps came to her home and asked Steven to accompany him to look at a motorcycle that he intended to take as collateral for a loan, if it was worth $500. Phipps had explained to Cherokee Hall that the victim, Gorman, owed him $500 which he was unable to pay but was willing to give Phipps his motorcycle in payment.

Steven Hall offered the same testimony as his mother and stated that he enjoyed working on motorcycles and that apparently Phipps believed he would know whether the motorcycle he had been offered by the vic-

tim was valuable enough to cover the debt. On arrival at the Bellflower house, Schacter asked the victim for the money, and Gorman replied that he did not have the money on him. Steven Hall also testified that, in the car, en route to the victim's apartment, the victim explained that he had used the borrowed $500 to have his motorcycle repaired, and that it was still in the shop, but that he would sign over the pink slip for it.

Defendant Shelburne testified that he had been approached by Phipps and asked to accompany him to see Randy Gorman, who had agreed to turn his motorcycle over in payment of a $500 debt.

■ The foregoing summary of the evidence demonstrates fairly conclusively that, although the evidence presented by the People might be said to have raised a weak inference that defendant and the other man intended to rob the victim, Gorman, at the time they took him to his apartment, that inference, being tenuous at best, fades into the realm of sheer speculation in the face of the defense explanation. To accept the People's case on the issue of intent requires that we believe that defendant, to whom the victim was not indebted, demanded that the victim give defendant and the other men $500 or turn over his motorcycle. On cross-examination, the victim admitted that Schacter had demanded that the victim sign over to him the pink slip for his Harley-Davidson motorcycle, although the victim had never discussed with defendant Shelburne even the fact that the victim owned a motorcycle, let alone what make it was.

When all of the evidence is considered—the victim's recital of the events and the defense explanation of those events—the People's case becomes insubstantial and there remains no credible evidence in support of the contention that the defendant Shelburne intended to rob the victim at the time the victim was taken from Bellflower to La Habra. The only intent at that time was that the lender was seeking possession of the victim's motorcycle as collateral for the loan. Clearly, there is substantial evidence to support a finding that defendant participated in forcibly kidnaping the victim, and that, upon arrival at his apartment, the victim was robbed with defendant being one of the perpetrators. However, "...in order to constitute kidnaping for the *purpose of robbery*, the specific intention to commit *that* crime must be present at the time of the original asportation of the victim." (*In re Alvarado* (1972) 27 Cal.App.3d 610, 612 [103 Cal.Rptr. 845].) (Italics added.)

The case before us is not unlike the cases of *In re Dennis* (1975) 46 Cal.App.3d 50 [120 Cal.Rptr. 267], and *In re Alvarado, supra,* 27 Cal.App.3d 610. In *In re Dennis,* the court reviewed all of the evidence and concluded that the real purpose of the kidnaping in that case was rape and not robbery, and that although the victim was ultimately robbed, there was insufficient evidence to support the conclusion that the defendant formed the intent to rob her at the time of the kidnaping. Similarly, in *In re Alvarado,* the court reversed a conviction for kidnaping for purposes of robbery, holding that "the evidence of intent to rob as contemporaneous with original asportation was exceedingly tenuous."

There being insufficient evidence to support the inference that defendant Shelburne intended to rob Gorman at the time the latter was taken to his apartment, the former's conviction of kidnaping for purposes of robbery must be reversed.

### III

### *Competency of Counsel*

█ Defendant Shelburne also contends that he was denied effective representation by counsel by reason of his attorney's failure to make a pretrial motion to suppress the iron rod introduced in evidence as the instrument with which he struck Gorman.

During the trial, Officer Heaton testified that he had impounded a 1964 Chevrolet parked outside the Bellflower house. On the front floorboard of the passenger side of the car, he had observed and retrieved a steel rod or bar. Counsel for Shelburne objected to any testimony concerning the rod, on the basis of possible Fourth Amendment violations in its seizure.

Shelburne's attorney asserted that he had not made a pretrial motion to suppress the item because he had not previously known that it was seized from a car. The prosecutor demonstrated that the transcript of the preliminary examination contained testimony by this same officer concerning his observation of the rod within the car. Defense counsel's motion to be allowed to challenge the evidence during the trial was thus denied as untimely.

Defendant advances the argument that he was denied the reasonably competent assistance of an attorney acting as his diligent conscientious

advocate (*People* v. *Pope* (1979) 23 Cal.3d 412, 419 [152 Cal.Rptr. 732, 590 P.2d 859]), and that counsel's failure to make a suppression-of-evidence motion resulted in withdrawing a crucial defense from the case. (*In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921].) In *Pope*, the Supreme Court set forth the guiding principle as follows: "Of course, the burden of proving a claim of inadequate trial assistance is on the appellant. [Citation.] Thus, appellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. *In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense..*" (*Pope, supra*, 23 Cal.3d 412, 425.) (Italics added.)

In the case before us, we conclude that defendant has not sustained his burden of proving that he was denied adequate trial assistance. It is manifest that had defendant's trial counsel made a pretrial suppression-of-evidence motion, it would have been denied. The officer testified that, on the evening of defendant's arrest, he observed the rod lying on the front floorboard of one of the two vehicles which had been used to kidnap the victim. The car was impounded that evening. It is clear that the officer could properly seize the steel rod because it was in plain view (*People* v. *Superior Court* (*Peck*) (1974) 10 Cal.3d 645, 649 [111 Cal.Rptr. 565, 517 P.2d 829]), and because the car itself was an instrumentality of the commission of the crime. (*People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145].)

No citation of authority is needed to support the principle that a failure to challenge admissibility of evidence on the theory that it resulted in the withdrawal of a crucial defense through inadequacy or incompetence, must fail when such evidence is clearly admissible. It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel.

The record reflects that sentence was imposed as to count I only—the violation of Penal Code section 209. Imposition on the remaining counts was suspended. In view of the reversal of defendant's conviction on count I, defendant must be sentenced on the remaining counts. Retrial of defendant on the Penal Code section 209 offense is precluded because our reversal of that conviction is predicated on insufficiency of the evidence. Since the evidence was insufficient as a matter of law to support defendant's conviction of a violation of Penal Code section 209,

a second trial for this offense is barred by the double jeopardy clause of the federal Constitution (U.S. Const., Fifth Amend.) pursuant to the rule enunciated in *Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141] and *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196].

The judgment of conviction of violation of Penal Code section 209 is reversed. The judgment of conviction of the remaining offenses is affirmed. The case is remanded to the trial court for imposition of sentence as to counts II and III.

Kingsley, Acting P. J., and Burke (M. L.), J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 18, 1980.

*Assigned by the Chairperson of the Judicial Council.