[Crim. No. 44157. Second Dist., Div. Five. Dec. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
VENCIL GREEN, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Certified for publication with the exception of parts III and IV.

**COUNSEL**

Joseph F. Walsh, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Susanne C. Wylie and Thomas L. Willhite, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**OSBORNE, J.**\*—Appellant was charged with and convicted of 12 felony offenses. He was alleged and found to have used a gun in all of the offenses except one.

On March 1, 1981, at 7 p.m., appellant robbed Ms. Johnnie Tyson.

On March 22, 1981, at 8:20 p.m., appellant robbed Ronald Taylor.

On March 23, 1981, at 3 a.m., appellant robbed John Glazar.

On March 23, 1981, at 3:30 p.m., appellant kidnaped Oscar Hamilton, robbed him, and stole his car.

On March 23, 1981, at 6 p.m., while using Hamilton's car, and with Hamilton imprisoned in the trunk, appellant robbed and assaulted Mohammad Karimzahdeh.

After robbing Karimzahdeh, appellant ran back to the car, and fled at high speed. Later that day, appellant told another male about having someone in the trunk, turned the car over to the other male and had him drive appellant home. Hamilton was able to escape from the trunk about 9 p.m.

---

\*Assigned by the Chairperson of the Judicial Council.

On March 23, 1981, at 11:45 p.m. appellant robbed Lawrence King and took his car and attempted to rob Lauren Lee.

About 10 minutes later, appellant was driving King's vehicle. Officer Adam Milecki spotted the car as stolen, and pursued it. He saw a gun thrown out of the car. Appellant jumped out of the moving car leaving it to bounce off parked cars until it stopped. Appellant had a passenger who got out but ran away. Milecki arrested appellant, who had suffered a broken arm.

On March 26, 1981, appellant was released on bail.

On March 27, 1981, at 12 p.m., appellant, with a cast on his arm, robbed Anne Saunders, age 81. (This is the only offense in which appellant did not have a gun.) He ran, but four men chased and caught him. He was rear-rested.

Appellant was again released on bail.

On April 6, 1981, at about noon, appellant attempted to rob Euploria Dotson. Mr. Dotson started to give him his money as demanded, but then refused. Appellant said, "I'm going to have to shoot you, then." Dotson ran, and appellant ran in the other direction. About a half-hour later, Officer Robert Coutts approached appellant and asked him if he had a gun. Appellant turned, threw a gun, and ran. Officer Coutts pursued, caught, and arrested appellant.

At his court trial, appellant presented expert testimony that several years of heavy use of PCP and other drugs affected his brain so that he did not have the specific intent necessary for each charge. The trial court rejected the defense, found him guilty of all charges, and sentenced him to state prison.

Appellant contends that: (1) there was not sufficient evidence to support the finding of the necessary specific intent; (2) he was denied the effective assistance of counsel; (3) the trial court erred in admitting former testimony of an absent witness; and (4) the movement of Mr. Hamilton did not substantially increase the risk of harm as required to support a separate conviction of kidnaping for the purpose of robbery. We find no error, and affirm. Only the first two issues meet the criteria for publication.

Additional facts will be discussed as they relate to the issues on appeal.

## I

### DIMINISHED CAPACITY

■ Appellant was convicted of robbery and kidnaping for the purpose of robbery. The trial court expressly found that appellant did form and have the specific intent inherent in the charges. Appellant contends there is not sufficient evidence to sustain that finding. We find that there was.

■ Our duty is as follows: "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

■ A series of victims testified to events from which triers of fact routinely infer the specific intent to steal, with routine appellate affirmance of the resulting convictions.

In this case, appellant presented evidence from two experts regarding diminished capacity.[2]

The People presented no expert witnesses.

Appellant contends that the unanimous psychiatric testimony must be accepted. To the contrary, expert testimony, even if uncontradicted, is not binding on the trier of fact, and may be rejected, especially where experts are asked to speculate about a defendant's state of mind at the moment the crime was committed. (*People* v. *Samuel* (1981) 29 Cal.3d 489, 502 [174 Cal.Rptr. 684, 629 P.2d 485]; *People* v. *Drew* (1978) 22 Cal.3d 333, 350

---

[2]Dr. Ira Frank, a psychiatrist and psychoanalyst, examined appellant about a year after he was incarcerated for these offenses. He concluded that appellant "was in a state of almost intoxication from the age of 14 until he was confined for these charges . . . ." "[D]rugs . . . formed the entire focus of his life, [so that] all of his behavior was centered around taking drugs, doing what is necessary to get the money to buy the drugs, [and] dealing in drugs . . . ." "It was as though his brain was being pickled [by being] immersed in body fluids containing chemicals, PCP, cocaine, marijuana, anything he could get his hands on." Appellant's constant intoxication for years "affected his brain to the point that his judgment was severely impaired," so that he did not have "the specific intent necessary to steal forcibly or to take and carry somebody away and detain them against their will." Without question, appellant's "intent was to get money to buy drugs."

Sidney Cohen, M.D., is a psychopharmacologist and expert on drug abuse. Dr. Cohen also examined appellant about a year later and concluded that appellant was a heavy user of PCP. His chronic brain dysfunction prevented him from forming an intent to commit a kidnaping or to understand the consequences of his act.

[149 Cal.Rptr. 275, 583 P.2d 1318]; *People* v. *Powell* (1974) 40 Cal.App.3d 107, 142, 161 [115 Cal.Rptr. 109]; *People* v. *Coogler* (1969) 71 Cal.2d 153, 166; *People* v. *Wolff* (1964) 61 Cal.2d 795, 805 [40 Cal.Rptr. 271, 394 P.2d 959]; Pen. Code, § 1127b.) To the extent that *People* v. *Duckett* (1984) 162 Cal.App.3d 1115 [209 Cal.Rptr. 96] implies that lay testimony cannot be sufficient substantial evidence to support a verdict or finding contrary to unanimous expert psychiatric testimony, we disagree. The trier of fact may consider the reasons given for expert opinions, and may weigh expert testimony with all of the evidence including the circumstances before, during, and after the offenses.

Appellant relies on *People* v. *Samuel, supra.* His reliance is misplaced. In *Samuel,* the issue was competence to stand trial, which turned on the defendant's intelligence, ability to communicate, and emotional and mental stability at that time. Five psychiatrists, three psychologists, a medical doctor, a nurse, and three psychiatric technicians all testified that Samuel was not competent to stand trial. "Against that impressive body of evidence, the prosecution offered lay testimony that scarcely did more than indicate that defendant could walk, talk, and at times, recall and relate past events." (*Id.,* at p. 503.) The court held, at pages 505-506, that there was not substantial evidence to support the verdict of competence.

In this case, there was ample evidence for the trial judge to decide how much weight, if any, to give to the psychiatric conclusions, and to decide whether appellant in fact formed the necessary specific intent to steal. The testimony of the other witnesses showed that appellant knew what he was doing and had the ability to make and carry out a plan for his crimes.

Appellant approached Ms. Johnnie Tyson as she was getting out of her car in the parking lot in back of her apartment; at gun point, he demanded money and took cash and her credit cards and asked her if she had any money stashed in the house.

Appellant approached Ronald Taylor after he got out of his car and asked Taylor for a ride to Western, before displaying a gun and robbing him.

Appellant had John Glazar, a cab driver, dispatched to a nonexistent address, met him, and identified himself as the fare; appellant said he wanted to go to Hollywood, asked if Glazar had change for $50 and Glazar said he did; appellant had him go around the block and pull over, and robbed him at gun point, searching his shirt pockets and getting his wallet out of his

pants pocket; and appellant told Glazar that if he ever saw him in court he would kill him.

When appellant approached Oscar Hamilton, he asked for change for $5, and then continued a conversation until Hamilton finished pumping gas and got back in his car; then appellant produced a gun and kidnaped and robbed Hamilton.

Mohammad Karimzahdeh was selling ice cream and food from a catering van when appellant approached and demanded money; when Karimzahdeh refused to give him money, appellant fired inside the van, and Karimzahdeh then gave him his money.

Lauren Lee was seated in her car when appellant approached and asked her for a match. He then crossed the street to where her boy friend, Lawrence King, was seated in his car and asked for and received a light. Appellant then produced a gun, robbed King of his money, and demanded money from Ms. Lee who was then standing nearby. Appellant then took King's car and attempted to kidnap King, who escaped by jumping out as the car started to move.

Appellant approached Anne Saunders as she was sitting on a bus bench, asked her if she had any change, and told her he could blow her head off; he said "your arm could be broken that way," meaning that the purse strap was around her arm so that her arm could be broken if her purse was snatched; but apparently she did not change the way she was holding the purse, because he snatched it and ripped the strap off the purse.

Euploria Dotson was in a store to cash a check when appellant approached and asked for a lift; appellant followed him out of the store and kept begging for a lift until they got to the corner, where appellant produced a gun and demanded his money.

Without belaboring the obvious, there was substantial evidence for the trial court to find that the appellant planned to, intended to, and in fact did, rob and kidnap the victims as alleged and intended to take and keep their property permanently from them.

## II

### EFFECTIVE COUNSEL

A defendant is entitled to the effective assistance of counsel. (*People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2

A.L.R.4th 1].) That right may be violated if an attorney fails to make an appropriate motion to suppress evidence and thereby deprives a defendant of a potentially meritorious defense. ■ Appellant contends he was denied effective counsel at trial because his attorney did not move to suppress evidence of a ring that was taken in one of the robberies.

Investigator Daniel Rogers testified that he found the ring in the apartment of appellant and his girlfriend, Carol Hartman. In cross-examining Rogers, appellant's trial attorney immediately inquired about the circumstances of obtaining the ring, specifically exploring the foundation for the entry.

Investigator Rogers and his partner went to the apartment of Carol Hartman, to serve a subpoena on her as a witness in the Anne Saunders robbery case. They found the apartment door wide open and wood chips on the floor by the door. The television was on, and the room had been ransacked, with clothes and papers strewn about. Because it looked like somebody might be inside injured or there might be a burglary in progress, the officers entered. They found no one inside, but in an open cardboard box they saw the silver puzzle ring which appellant had taken from John Glazar.

Appellant concedes that an emergency is an exception to the general requirement for a warrant to enter and search an apartment. He questions its application in this case. The officers' concerns were reasonable in view of the circumstances they observed. *People* v. *Solario* (1977) 19 Cal.3d 760, 763-764 [139 Cal.Rptr. 725, 566 P.2d 627], guides our decision. The officers were not required to knock and announce themselves or ask for permission to enter. To do so would impede them in protecting the householder's privacy and property. "Worse, it would jeopardize the officers' safety, as well as the safety of the householder and other innocent persons present on the premises, by giving the burglar the opportunity to fortify his position and to take hostages." (*Id.*, at p. 764.) Nor were the officers required to leave and ignore what they saw. The officers did not violate anyone's right to privacy by entering the residence—they protected the resident's rights. Their actions were proper. Indeed, under the circumstances, the officers would properly have been subject to serious criticism if they had not checked the apartment further.

Appellant must show that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Jackson* (1980) 28 Cal.3d 264, 289 [168 Cal.Rptr. 603, 618 P.2d 149].) Appellant shows no reasonable probability that any meritorious defense was withdrawn. To the contrary, the evidence at trial shows why his attorney did not move to suppress the evidence—the motion would not have been meritorious.

Appellant's trial counsel did not deprive him of any meritorious defense and cannot be found incompetent for not formally moving to suppress the ring. ▮ "It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Shelburne* (1980) 104 Cal.App.3d 737, 744 [163 Cal.Rptr. 767].)

Furthermore, at a pretrial lineup about two weeks after the robbery, and again at trial, Mr. Glazar positively identified appellant as the man who robbed him. Defendant's identity as the robber was not disputed. Intent was the only issue. Therefore, even if evidence of Mr. Glazar's ring had been suppressed, there is no reasonable possibility, much less a reasonable probability, that a result more favorable to appellant would have occurred. (*People v. Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) Appellant was not denied the effective assistance of counsel at trial.

### III

### FORMER TESTIMONY*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The People did not present expert witnesses to contradict appellant's psychiatric evidence that he did not have the specific intent required for the crimes charged. That, however, did not require the trial court, as a matter of law, to acquit defendant of all charges. Testimony about the circumstances before, during, and after the offenses constituted substantial evidence to support the court's findings.

Appellant was not denied the effective assistance of counsel at trial. Counsel was not required to make a meritless motion to suppress evidence. No meritorious defense was withdrawn.

In the unpublished part of this opinion, we considered the remaining contentions of defendant and concluded that: the trial court properly admitted evidence of former testimony of a witness who had returned to Iran and whom the People had diligently tried to subpoena; and the movement of Mr. Hamilton exposed him to greatly increased risk of harm and supported conviction of kidnaping for the purpose of robbery.

---

*See footnote 1, *ante*, page 239.

Accordingly, the judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1985.