Filed 9/23/16  P. v. Stephenson CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEREMY STEPHENSON,<br><br>Defendant and Appellant. | B260481<br><br>(Los Angeles County<br>Super. Ct. No. BA415722) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Kennedy, Judge.  Affirmed and remanded with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.

_____

Jeremy Stephenson, age 16 at the time of his offenses, appeals from the judgment of conviction following trial as an adult. A jury convicted appellant of four counts of attempted premeditated murder (Pen. Code,[1] §§ 667/187, subd. (a)) and found all gang and firearm allegations true. (§§ 186.22, subd. (b)(1)(C), 12022.7, subd. (a), 12022.53, subds. (b), (c), (d), (e)(1)). The trial court imposed a term of 40 years to life in state prison.[2] Appellant contends that as a de facto term of life without the possibility of parole, his sentence violates the Eighth Amendment to the federal Constitution as well as the California Constitution. He maintains that section 3051, which requires a parole hearing during the 25th year of incarceration for certain juvenile offenders, including appellant, does not cure the fundamentally cruel and unusual nature of the punishment he received for crimes committed as a juvenile. Appellant further contends the trial court abused its discretion in imposing a 40-years-to-life sentence, and defense counsel was ineffective for failing to propose a term below the statutory minimum.

We find the California Supreme Court's recent decision in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to be dispositive of the sentencing issues presented in this appeal. We therefore affirm appellant's sentence, but, in accordance with *Franklin*, remand the matter to the trial court for the limited purpose of determining whether appellant has had an adequate opportunity to make a record of information that will be relevant in any youth offender parole hearing to which appellant may be entitled pursuant to section 3051.

## FACTUAL BACKGROUND

On July 4, 2012, approximately 10:00 p.m., appellant and another boy walked up to the home of Nakoi Coleman, who was on the front porch with her mother, Lisa

---

[1] Undesignated statutory references are to the Penal Code.

[2] The sentence on count 1 consisted of a mandatory term of 15 years to life for attempted murder (§§ 664, subd. (f), 186.22, subd. (b)(5)), plus a consecutive mandatory term of 25 years to life for the firearm use with great bodily injury enhancement (§ 12022.53, subd. (d)). The court imposed concurrent sentences for counts 2, 3, and 4.

Brumfield, and friends Dashua Hunter and Anthony Taylor. Appellant was carrying a rifle; his companion had a handgun. The youths stopped under a street light in front of the porch. Appellant yelled, "Fuck Crabs," and fired a shot at the people on the porch. Appellant seemed nervous and scared, and after the first shot his rifle appeared to jam. As he fumbled with the gun to get it working again, his companion fired at the group on the porch. Once appellant "un-jammed" his rifle, he fired another shot toward the porch. Coleman heard more than five shots from two different guns. As the shooters fled, one of them, whom Coleman described in her call to 911 as "a little boy," slipped and fell on the grass.

Hunter was shot in the face and foot from point-blank range. The shot to his face broke his jaw. Part of the bullet lodged in his spine, where it remained at the time of trial, and he suffered permanent facial numbness as a result. Hunter was hospitalized for over two weeks after the shooting, and had four or five surgeries.

Police found two .22-caliber shell casings and five nine-millimeter shell casings in the grass near the sidewalk leading to the porch where the shooters had been standing. The .22-caliber shells had been ejected from either a bolt- or lever-action rifle.

Hunter and Taylor identified appellant from a photographic line-up as the shooter with the rifle who announced, "Fuck Crabs," before firing the first shot. Hunter, Taylor, and Coleman all identified appellant at trial. The defense countered with expert testimony that eye witness identifications are highly unreliable, with factors such as high levels of stress, the presence of weapons, and the passage of time, making average accuracy rates as low as 30 percent.

The prosecution presented expert opinion that appellant committed the instant crimes for the benefit of the 55 Neighborhood Crips criminal street gang, of which he is an active member. The expert based his opinion of gang membership on appellant's gang-related tattoos and clothing, appellant's own admissions and gang monikers, and photographs of appellant displaying various hand signs for the 55 Neighborhood Crips. The expert found the crime was committed for the benefit of appellant's gang because the

shooting took place in the territory of a rival Blood gang, the Van Ness Gangsters. These two "mortal rivals" had been actively feuding in July 2012 by crossing out each other's graffiti in the rival's territory. The expert opined that appellant's exclamation, "Fuck Crabs," during the incident constituted a very derogatory reference to the Crips gang. The expert explained that a Crips gang member committing a crime in rival gang territory would typically use such a declaration to confuse victims or potential witnesses and to avoid apprehension by police.

## DISCUSSION

### 1. *Appellant's constitutional challenge to his sentence is moot.*

Appellant contends that his sentence of 40 years to life constitutes a de facto term of life without the possibility of parole imposed on a juvenile for a nonhomicide offense. As such, the sentence violates the Eighth Amendment's bar against cruel and unusual punishment. He further maintains that section 3051, which requires a parole hearing during the 25th year of incarceration for certain juvenile offenders, including appellant, does not cure the fundamentally cruel and unusual nature of the punishment he received for crimes committed as a juvenile. Our Supreme Court's decision in *Franklin*, *supra*, 63 Cal.4th 261, disposes of both of these assertions.

In *Franklin*, the defendant was 16 years old when he shot and killed another 16-year-old boy. He was convicted of first degree murder with a personal firearm discharge enhancement, and sentenced to two consecutive 25-year-to-life sentences, for a total sentence of 50 years to life. Franklin challenged the constitutionality of his sentence under *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*), *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), contending the sentence was barred as the functional equivalent of a mandatory life without parole (LWOP) sentence for a juvenile offender. Noting that Senate Bill No. 260, which added sections 3051, 3046, subdivision (c), and 4801,

4

subdivision (c)[3] to the Penal Code, was "recently enacted by the Legislature to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*," the California Supreme Court held that Franklin's constitutional challenge to the mandatory sentence was moot, based on the new provisions' requirement that the Board of Parole Hearings (Board) hold a youth offender parole hearing in the 25th year of the juvenile offender's incarceration. (*Franklin*, *supra*, 63 Cal.4th at pp. 268, 276–277.) The high court reasoned that, "[c]onsistent with constitutional dictates, [sections 3051 and 4801] provide [a juvenile offender] with the possibility of release after 25 years of imprisonment (Pen. Code, § 3051, subd. (b)(3)) and require the Board of Parole Hearings . . . to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' (*id*., § 4801, subd. (c))." (*Franklin*, at p. 268.) In light of its holding, the court declared, "we need not decide whether a life sentence with parole eligibility after 50 years of incarceration is the

---

[3] In relevant part section 3051 provides: "A person who was convicted of a controlling offense that was committed before the person had attained 23 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions." (§ 3051, subd. (b)(3).) " 'Controlling offense' " is defined as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

Section 3046, subdivision (c) provides: "Notwithstanding subdivisions (a) and (b), an inmate found suitable for parole pursuant to a youth offender parole hearing as described in Section 3051 shall be paroled regardless of the manner in which the board set release dates pursuant to subdivision (a) of Section 3041, subject to subdivision (b) of Section 3041 and Sections 3041.1 and 3041.2, as applicable."

Section 4801, subdivision (c) provides: "When a prisoner committed his or her controlling offense, as defined in subdivision (a) of Section 3051, prior to attaining 23 years of age, the board, in reviewing a prisoner's suitability for parole pursuant to Section 3041.5, shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law."

5

functional equivalent of an LWOP sentence and, if so, whether it is unconstitutional in Franklin's case." (*Ibid*.)

*Franklin* began its analysis of section 3051 by noting the express legislative intent underlying Senate Bill No. 260: "Section 1 of the enactment states in part: 'The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero*[, *supra*,] 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham v. Florida*[, *supra*,] 560 U.S. 48, and *Miller v. Alabama*[, *supra*,] [183 L.E.2d 407]. . . . It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established.' (Stats. 2013, ch. 312, § 1.)" (*Franklin*, *supra*, 63 Cal.4th at p. 277.)

Holding that sections 3051 and 3046 have superseded statutorily mandated sentences of juvenile offenders, the court declared that section 3051 "reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' (Stats. 2013, ch. 312, § 1) so that he or she may have 'a meaningful opportunity to obtain release.' (§ 3051, subd. (e).)" (*Franklin*, *supra*, 63 Cal.4th at p. 278.)

Like the defendant in *Franklin*, appellant relies on *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*) to contend that section 3051, like section 1170, subdivision (d)(2) (which allows a juvenile to petition to recall an LWOP sentence after 15 years) cannot remedy the constitutional infirmities of a sentence that fails to comport with the Eighth Amendment in the first instance. *Franklin* rejected appellant's contention,

6

observing that "this argument misses a crucial difference between section 3051 and section 1170, subdivision (d)(2)." (*Franklin*, *supra*, 63 Cal.4th at p. 281.) Unlike section 1170, subdivision (d)(2), which leaves the LWOP sentence fully effective and places the onus on the juvenile offender to petition the court for recall, section 3051 "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." (*Ibid.*)

Appellant recognizes that section 3051 "might have a potential ameliorative effect on terms exceeding Eighth Amendment limitations," but maintains that it does nothing to make an excessive sentence constitutional, and thus cannot moot the issue of whether a juvenile's 40-years-to-life sentence comports with the Eighth Amendment. He further asserts that by holding out the possibility of parole after 25 years in prison, section 3051 affords scant relief to the youthful offender whose "disproportionate sentence should not have been imposed in the first place." *Franklin*, however, holds otherwise. The basic flaw in appellant's argument is that it assumes the unconstitutionality of any life-top sentence for a juvenile regardless of parole eligibility. But as *Graham* explained, the Eighth Amendment does not require the state to release or guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime during his natural life. Rather, what the state must do is afford juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham*, *supra*, 560 U.S. at p. 75.) California has accomplished this mandate with the enactment of sections 3051, 3046, subdivision (c), and 4801, subdivision (c), which effectively eliminate the possibility of a de facto LWOP by capping the number of years a youthful offender may be imprisoned before becoming eligible for parole. (*Franklin*, *supra*, 63 Cal.4th at p. 278.)

Here, as in *Franklin*, "the combined operation of section 3051, section 3046, subdivision (c), and section 4801 means that [appellant] is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent." (*Franklin*, *supra*, 63

Cal.4th at pp. 279–280.)  Because appellant's sentence cannot be characterized as a de facto LWOP, appellant's challenge to his sentence under the Eighth Amendment is moot.

For the same reasons, we find no merit in appellant's claims that the trial court failed to properly apply the *Miller* factors and abused its discretion in imposing a disproportionate and constitutionally excessive sentence.  Appellant vigorously argued below that the court must take into account a juvenile offender's inherently diminished capacity under *Miller* and *Graham*, and impose a sentence of 32 years to life or less in order to afford appellant "a meaningful opportunity to exercise freedom as a mature and rehabilitated man."  In support of the argument for a sentence less than the statutory minimum, appellant presented the full transcript from his fitness hearing along with various documents which had been submitted to the court for the fitness hearing, including two forensic psychological evaluations, a psychosocial report by a psychiatric social worker, and academic progress reports and character references.  He also argued that the court had discretion to dismiss the gang enhancement in the interest of justice, which could have reduced the sentence to a term of 32 years to life.  The trial court thus had before it ample information from which to consider the relevant youth-related factors about appellant.  That the court nevertheless imposed the minimum mandatory term rather than devising a lower term not authorized by law does not constitute an abuse of discretion.  (See *People v. Perez* (2013) 214 Cal.App.4th 49, 57–58.)

We also reject appellant's contention that, even if not a de facto LWOP sentence, his sentence is grossly disproportionate to his offenses and constitutionally excessive under *In re Lynch* (1972) 8 Cal.3d 410 (*Lynch*) and *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon*).

"Whereas the federal Constitution prohibits cruel 'and' unusual punishment, California affords greater protection to criminal defendants by prohibiting cruel 'or' unusual punishment."  (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1092; *Lynch*, *supra*, 8 Cal.3d at p. 424.)  Thus, "a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the

crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, at p. 424; *Dillon*, *supra*, 34 Cal.3d at p. 478.)

"Because it is the Legislature which determines the appropriate penalty for criminal offenses, defendant must overcome a 'considerable burden' in convincing us his sentence was disproportionate to his level of culpability." (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196–1197.) For this reason, successful challenges under the traditional *Lynch-Dillon* disproportionality analysis "have occurred with exquisite rarity." (*Id*. at p. 1196; *People v. Perez*, *supra*, 214 Cal.App.4th at p. 60.) Indeed, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77.)

In evaluating whether a sentence is relatively cruel or unusual under a disproportionality approach, we examine "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Lynch*, *supra*, 8 Cal.3d at p. 425; *People v. Haller*, *supra*, 174 Cal.App.4th at p. 1092; *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085.) "Relevant factors to consider are the facts of the current crime, the minor nature of the offense, the absence of aggravating circumstances, whether it is nonviolent, and whether there are rational gradations of culpability that can be made on the basis of the injury to the victim or to society in general. ([*Lynch*], at pp. 425–426.)" (*People v. Carmony*, *supra*, 127 Cal.App.4th at p. 1085; *People v. Haller*, *supra*, 174 Cal.App.4th at p. 1092.) The defendant's youth is also a valid consideration. (*Graham*, *supra*, 560 U.S. at p. 61.) Noting that "each offender is necessarily an individual," *Dillon* explained that the inquiry into " 'the nature of the offender' " "asks whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Dillon*, *supra*, 34 Cal.3d at p. 479.)

Appellant cites his youth, limited criminal record, mental handicaps, family support, and progress on probation and in therapy to contend that his 40-years-to-life sentence is disproportionate to his culpability in this case. He also emphasizes one

victim's description of him as a little boy, and other statements that he appeared nervous and scared, and fell down as he made his escape. None of this suggests that the offense in this case—four attempted murders, with personal use of a firearm and great bodily injury to one victim—was anything but a very serious and dangerous crime. Appellant has failed to show that his background or the circumstances of the offense were so unusual and mitigating as to render the statutorily mandated sentence disproportionate or constitutionally excessive, nor are we persuaded that the instant case is among those exceptionally rare cases meriting reversal of the sentence on the basis of gross disproportionality.

**2.** ***Appellant did not receive ineffective assistance of counsel at the sentencing hearing.***

We also find no merit to appellant's claim that defense counsel was ineffective for failing to propose a term below the statutory minimum.

In order to establish ineffective assistance of counsel, a " 'defendant must show that counsel's representation fell below an objective standard of reasonableness,' " that is, that counsel made errors so grave as to deprive the defendant of the counsel guaranteed by the Sixth Amendment. (*Williams v. Taylor* (2000) 529 U.S. 362, 390–391, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) The defendant must also demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial." (*Strickland*, at p. 687.) "To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Id.*, at p. 694." (*Williams v. Taylor*, *supra*, 529 U.S. at p. 391.)

In assessing a defendant's claim of ineffectiveness, the Supreme Court has cautioned "that a court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light

10

of hindsight." (*Bell v. Cone* (2002) 535 U.S. 685, 702.)  Our review of counsel's performance is therefore deferential (*In re Jones* (1996) 13 Cal.4th 552, 561), and we will reverse a conviction " ' "on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' " (*People v. Vines* (2011) 51 Cal.4th 830, 876; *People v. Lucas* (1995) 12 Cal.4th 415, 436–437.)

As set forth above, appellant vigorously argued the court's discretion to impose a reduced sentence of 32 years to life and presented mitigating factors to justify a lower sentence.  Counsel's approach was justifiably conservative:  Instead of arguing for an unauthorized sentence well below the statutory minimum, defense counsel advocated a sentence that the trial court might realistically impose.  The court, however, rejected any reduction in the sentence, thus refusing to exercise its discretion in the manner appellant advocated.  "It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Shelburne* (1980) 104 Cal.App.3d 737, 744.)  Here, counsel's failure to persist in advocating for a lower sentence did not amount to deficient performance because any such insistence clearly would have been futile.

## DISPOSITION

The judgment is affirmed, and the matter remanded to the trial court for the limited purpose of determining whether appellant has been afforded an adequate opportunity to make a record of information that will be relevant to the Board of Parole Hearings as it fulfills its statutory duties in accordance with Penal Code sections 3051 and 4801.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

12