Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/19/2016 09:08 AM CDT

State of Nebraska, appellee, v.
James M. Saylor, appellant.
___ N.W.2d ___

Filed August 19, 2016.    No. S-15-329.

1. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law.

2. **Effectiveness of Counsel: Appeal and Error.** With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

4. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

5. **Records: Appeal and Error.** The party appealing has the responsibility of including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review.

6. ____: ____. A bill of exceptions is the only vehicle for bringing evidence before the Supreme Court; evidence which is not made part of the bill of exceptions may not be considered.

7. **Trial: Prosecuting Attorneys: Words and Phrases.** Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

8. **Evidence: Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.

9. **Stipulations: Pleas: Evidence.** A stipulation entered by a defendant can be tantamount to a guilty plea. But this is true only when the defendant stipulates either to his or her guilt or to the sufficiency of the evidence.

10. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

11. **Effectiveness of Counsel.** The effectiveness of counsel is not to be judged by hindsight.

12. **Effectiveness of Counsel: Time: Appeal and Error.** Claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented the defendant at trial are premature and will not be addressed on direct appeal.

13. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

WRIGHT, MILLER-LERMAN, CASSEL, and KELCH, JJ., and MOORE, Chief Judge.

KELCH, J.

## INTRODUCTION

Lena Saylor (Lena) was found dead in her home on April 27, 1984. The State charged James M. Saylor (Saylor), Lena's grandson, with first degree murder, based upon evidence that Saylor had hired Michael Sapp to kill Lena. After a stipulated bench trial, the district court for Lancaster County found Saylor guilty of second degree murder and sentenced him to life in prison. This court affirmed on direct appeal. See *State v. Saylor*, 223 Neb. 694, 392 N.W.2d 789 (1986). Now, 30 years later, Saylor appeals the district court's 2015 order that denied his motion for postconviction relief, following a limited evidentiary hearing. We reject Saylor's claims of, inter alia, ineffective assistance of counsel, prosecutorial misconduct, and prejudicial conduct by the trial judge, and we affirm.

## BACKGROUND

### PRETRIAL PROCEEDINGS

Sometime in 1984, the State charged Saylor with first degree murder. The original information is not in the record for this appeal. At that time, hiring the killing of another person was an aggravating factor supporting the death penalty. Neb. Rev. Stat. § 29-2523(1)(c) (Reissue 1979) (repealed 2015 Neb. Laws, L.B. 268, § 35).

Police had arrested Saylor in April 1984, immediately after he made tape-recorded statements about Lena's death to his friends David Timm and Jeffrey Menard. On July 12, 1984, Saylor filed a motion to dismiss, which was denied. On December 7, Saylor filed a motion to suppress the tape recordings. On February 6, 1985, the district court conducted a hearing on that motion. Patrick Healey and Susan Jacobs represented Saylor. Michael Heavican, the county attorney at that time, had declared a conflict because he anticipated

that he may be called as a witness, and Terry Dougherty was appointed special prosecutor for the case.

While the motion to suppress was still under advisement, Dougherty proposed that the parties resolve the matter by agreement, and the parties negotiated. Ultimately, the parties agreed to a stipulated trial to allow Saylor to contest the district court's ruling on his motion to suppress. We recount additional details regarding the parties' negotiations in the analysis section below. On April 2, 1984, the district court denied the motion to suppress.

On April 5, 1985, Saylor waived his right to a jury trial. The district court confirmed that Saylor did so freely, voluntarily, and knowingly. Next, Dougherty summarized the parties' agreement for the record, which summary we quote in the analysis portion of this opinion. Saylor's counsel acknowledged that Dougherty had correctly described the agreement, and neither Saylor nor his counsel contradicted it.

## Stipulated Bench Trial and Direct Appeal

On May 10, 1985, the State amended the charge to second degree murder. The district court advised Saylor that he had the right to be served with the amended copy of the information and to wait 24 hours before appearing for arraignment, and Saylor waived those rights. The district court proceeded with the arraignment, and Saylor pled not guilty to the amended charge. The district court then conducted the stipulated bench trial. We summarize those proceedings in part here and provide additional relevant details in other portions of this opinion.

The 20-page written stipulation, signed by Dougherty, Healey, and Saylor, set forth evidence that Saylor had hired Sapp to kill Lena. In that document, the parties stipulated that all items of evidence discussed and offered had an adequate chain of custody. Along with the written stipulation, the parties submitted other evidence by stipulation, including the tape

recordings of the conversation between Saylor, Timm, and Menard in April 1984. Saylor's counsel renewed his motion to suppress, which the district court again overruled.

Healey argued to the district court that the matter was submitted with stipulated facts, but that this left "to the court the question of whether the stipulated matter proves [Saylor's] guilt and if so, what offense."

On May 20, 1985, the district court found Saylor guilty of second degree murder. Saylor filed a motion for new trial. On August 7, the district court overruled Saylor's motion for new trial and sentenced him to life in prison.

On direct appeal to this court, Saylor claimed that the district court erred in overruling his motion to suppress the recorded conversation. *State v. Saylor*, 223 Neb. 694, 392 N.W.2d 789 (1986). Healey and Jacobs represented Saylor on appeal. This court described the recordings as including "incriminating" and "inculpatory" statements in which Saylor "indicated that he had hired someone to kill his grandmother." See *id*. at 697, 392 N.W.2d at 792. We affirmed.

## POSTCONVICTION PROCEEDINGS

On August 22, 2012, Saylor filed a pro se motion for post-conviction relief; his new counsel filed a lengthy amended motion for postconviction relief on February 7, 2013.

The district court granted an evidentiary hearing, but limited its scope to ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and prejudicial conduct of the trial judge. Saylor's remaining claims were not permitted to proceed to the evidentiary hearing. The district court specifically noted that Saylor had addressed the ruling on the motion to suppress on direct appeal and could not relitigate it.

Sometime prior to November 20, 2014, Saylor gave notice of his intent to call an attorney to give expert testimony at the evidentiary hearing regarding whether Saylor's trial counsel's performance was deficient and whether Saylor was prejudiced by such alleged deficiencies. The State responded

with a motion to preclude the attorney's testimony. After reviewing the attorney's proposed testimony, the district court precluded it, finding that it would not have assisted the trier of fact in understanding the evidence or determining a factual issue.

The district court conducted the evidentiary hearing on December 1 through 4, 2014, and January 6, February 17, and March 11, 2015.

Saylor offered the clerk's transcript from the stipulated bench trial, which the district court received. The record contains a photocopy of the front page of the clerk's transcript, with a notation that the original would be furnished by the reporter upon request. The remainder of the clerk's transcript is not in the record.

Saylor testified that immediately before he entered his jury waiver, Healey had advised him that the stipulated trial format was the best way to resolve the matter because Saylor could try the case and "not be found guilty of anything more than second degree and would not receive the death sentence." Saylor said he understood that Healey would be able to include facts in the stipulation that challenged the State's case. Saylor denied that either of his attorneys informed him that he could withdraw his jury waiver if the parties could not agree on the stipulation.

According to Saylor, between the jury waiver and the stipulated trial, his counsel did not discuss the contents of the stipulation with him. Saylor further testified that he did not see any written version of the stipulation until immediately before the stipulated bench trial and that he had less than 10 minutes to review it. Saylor denied understanding the stipulation because it was "very, very complicated."

Dougherty testified that he waited to amend the charge until after Saylor had waived the jury trial because he did not want Saylor to receive the benefit of the bargain until after the parties had agreed on the stipulated facts and submitted them to the district court. Dougherty testified that had the parties not

reached such agreement, he would have joined in Saylor's request to withdraw his jury waiver.

Healey, who acted as lead defense counsel, had died before the postconviction proceedings. Cocounsel Jacobs testified that defense counsel would have requested a jury trial if Saylor had requested it at any time after waiving the jury trial and before the verdict. She denied that Saylor ever told her he did not want to enter into the stipulation. She admitted that she did not recall many things about Saylor's case, but she testified that if he had indicated that he did not want to enter into the stipulation, she thought she would remember, because "[t]hat's critical." Jacobs testified that had she believed the stipulation contained a material misrepresentation, she would have informed the district court, but that she did not. Jacobs did not recall requesting any discovery documents from the prosecution that Saylor's counsel did not receive.

Jacobs testified that the possibility of the death penalty in Saylor's case "always loomed large" and that Saylor's recorded statements to Timm and Menard would be very persuasive evidence of Saylor's guilt in the event of a trial and would likely have been admitted. Saylor admitted that he expressed concern about the death penalty to Healey and Jacobs and that he agreed to the stipulated trial to avoid the death penalty. Dougherty testified that had Saylor gone to trial, he would have sought the death penalty, but that he was willing to forgo the possibility in exchange for Saylor's agreement to the stipulated trial.

The record contains timesheet evidence that Dougherty had contact with the county attorney's office through short telephone conferences throughout the case. In his 1984 deposition, Gary Lacey, the chief deputy county attorney, testified that he consulted with Dougherty on moving Saylor and Sapp, witnesses for their cases, and the death qualification issue. Lacey testified that Heavican and Dougherty met with the director of the parole board about an inmate who wanted work release in exchange for information he had received from

Sapp. Dougherty testified that he communicated with Lacey and Heavican, in part, because he did not have the authority to make a binding deal with the inmate. Dougherty denied having ex parte communications with the district court, and he denied that Heavican was actively involved in directing him in the prosecution of the case.

At the time of the postconviction proceedings, the tape recordings of Saylor's conversation with Timm and Menard were inaudible, and the district court did not admit their verbatim transcript due to authentication issues. However, the district court received a synopsis of the tape recordings contained in the deposition of Jim Peschong, who was one of the detectives involved in the case. According to Peschong's synopsis, Saylor admitted to hiring someone to kill Lena. Peschong documented that Saylor told Timm and Menard that the person hired was someone they knew.

The stipulation had stated that Dr. Reena Roy, an expert in forensic serology, tested a pillow obtained from the scene and detected a substance that could have come from Lena's saliva on the pillow. According to the stipulation, Roy received the pillow from the property room custodian of the Lincoln Police Department. At the postconviction hearing, Dougherty acknowledged that the property room custodian had given the pillow to a third person who then gave it to Roy. Dougherty testified that rather than recount the entire chain of custody, he phrased the stipulation to show that the pillow "got from the custodian in the property room to the person who tested it and there was a chain of custody and this is the pillow." He denied attempting to mislead the district court in this regard or with any facts in the stipulation and testified that he had drafted the stipulation in good faith, believing the facts were accurate.

The stipulation had included evidence attributed to Dr. David Kutsch, who performed an autopsy on Lena on the morning of her death. According to the stipulation, it was Kutsch's opinion that injuries to Lena's face could have been

caused by someone placing a hand or other object over Lena's face to smother her. Kutsch opined that Lena died at approximately 5 a.m.

The stipulation had stated that based on Kutsch's examination of the scene, the autopsy, and the information supplied by police, Kutsch would testify at trial within a reasonable degree of medical certainty that (1) the injuries occurred approximately at the time of Lena's death, (2) respiratory arrest caused Lena's death, and (3) although Lena could have died of natural causes, smothering most likely caused respiratory arrest.

The stipulation had noted that Kutsch also testified in a deposition on October 9, 1984, that it was "indeterminate as to whether her demise was from natural causes or from smothering," but that he rendered that opinion before he knew the definition of "'reasonable degree of medical certainty.'"

At the postconviction hearing, Saylor presented the testimony of two forensic pathologists. Upon a review of the records in the case, they opined that Lena's death was consistent with chronic obstructive pulmonary disease and that she died of natural causes. One pathologist opined that neither smothering nor lung disease could be ruled out, but that based on the autopsy alone, lung disease was the more probable cause of death. The other pathologist agreed with Kutsch's 1984 deposition opinion, cited in the stipulation, that it was "indeterminate as to whether [Lena's] demise was from natural causes or from smothering." Saylor presented additional evidence attempting to call into question Kutsch's qualifications, conclusions, and handling of the evidence in Saylor's case. To further support the theory that Lena, age 83, was in poor health and died of natural causes, Saylor presented evidence from the scene of the crime, the autopsy, and Lena's medical history.

The district court also received evidence that on May 19, 1984, Saylor attempted to solicit the murders of Timm and Menard via a letter to his brother, in an effort to prevent the use of their recorded conversation with Saylor.

## Motion to Reopen

On December 17, 2014, Saylor filed a pro se "Verified Motion to Reopen Case and Present Additional Evidence," which Saylor's counsel later adopted. Saylor sought to present exculpatory medical evidence of a scab and ecchymosis, or bruising, near Lena's right eye, which Kutsch opined were incurred several hours to a day before Lena's death. Saylor further asserted that "incomplete, untrue, or outright false" evidence in the stipulation was not brought to the district court's attention at the postconviction hearing. Saylor's motion challenged the same evidence and made similar claims as he had at the postconviction hearing.

On January 8, 2015, the district court overruled Saylor's "Verified Motion to Reopen Case and Present Additional Evidence."

## District Court's Order Denying
### Postconviction Relief

On March 17, 2015, the district court entered a detailed order denying Saylor's motion for postconviction relief. The district court rejected Saylor's claims that he had received ineffective assistance of trial and appellate counsel. Further, it found no prosecutorial misconduct and no improper conduct by the trial court. The district court found that even if Saylor had established improper or deficient conduct by any of the participants involved in his case, he did not prove any resulting prejudice. It stated, "[Saylor] has not presented objective evidence showing a reasonable probability that he would have insisted on going to trial or that the result would have been different absent the claimed failings of his trial counsel, the prosecutor and the trial judge." The district court observed that "significant facts" overwhelmed evidence of prejudice, namely that Saylor had admitted to hiring someone to kill Lena, that Sapp would likely testify against Saylor, and that evidence that Saylor attempted to solicit the murders of Timm and Menard may well have been admissible at

trial under Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 1985).

## ASSIGNMENTS OF ERROR

Saylor assigns, condensed and restated, that the district court erred in (1) determining that Saylor was not prejudiced; (2) precluding expert testimony by an attorney; (3) considering in its prejudice analysis: (a) Saylor's taped admissions, (b) a letter to Saylor's brother, and (c) possible testimony by Sapp; (4) determining the benefits secured to Saylor by the agreement; (5) making erroneous findings regarding medical evidence; (6) finding that Saylor's right to a speedy trial had not been violated; (7) finding that Saylor had failed to prove prosecutorial misconduct; (8) finding Saylor was not coerced in agreeing to the stipulation; (9) finding that the trial court did not err in failing to advise Saylor of his right to confrontation; and (10) denying Saylor's motion to reopen.

Saylor further assigns that the district court erred in (11) failing to find that Saylor had received ineffective assistance of trial and appellate counsel in that counsel either made the following errors at trial or failed to raise them on appeal: (a) failed to seek withdrawal of Saylor's jury waiver, (b) prematurely allowed Saylor's jury waiver, (c) failed to include exculpatory medical evidence regarding Lena in the stipulation, (d) failed to object to portions of the stipulation and to insist on evidentiary rulings, (e) failed to investigate Kutsch's change in testimony, (f) failed to consult an independent medical expert, (g) failed to require production of medical evidence, (h) failed to inquire as to the consequences of taking or not taking prescribed medications, (i) failed to interview or depose stipulation witnesses, (j) failed to invoke Saylor's right to a speedy trial, and (k) failed to raise ineffectiveness issues on appeal.

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves

conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law. See *State v. Poe*, 292 Neb. 60, 870 N.W.2d 779 (2015).

[2] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Branch*, 290 Neb. 523, 860 N.W.2d 712 (2015).

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

[3,4] Saylor assigns that the district court erred in failing to find that he received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). To show prejudice under the prejudice component of the *Strickland* test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Thorpe, supra*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The majority of Saylor's assignments of error relate to his premise that he received no benefit when the State reduced his charge from first degree murder to second degree murder and that a stipulated trial meant he would be able to contest every factual issue. However, the record shows that this argument is not well founded.

Initially, Dougherty sent a letter to Healey advising that the State would reduce the charge of first degree murder to second degree murder and that Saylor would plead guilty to second degree murder but also testify against his codefendant, Sapp. Ultimately, this initial offer morphed into the agreement whereby the parties would compromise on a stipulated trial to allow Saylor to contest the district court's ruling on his motion to suppress. In fact, in a letter to Healey dated May 7, 1985, Dougherty advised:

Enclosed is a revised proposed stipulation for use in . . . Saylor's trial to the court. In getting your client's approval for this stipulation, please ask him to keep a couple of things in mind.

My intention in having a stipulated trial was in effect to allow your client to plead guilty without giving up his right to appeal the Judge's ruling on the motion to suppress. I certainly did not intend to lower the charge from first to second degree murder with the idea of agreeing to a stipulation with facts that would not result in a finding of guilty on the reduced felony. The stipulation should be thought of as the equivalent of a factual basis which would be recited by a prosecutor to support a guilty plea by a defendant. Although I remain available for discussion of some minor changes, if the basic format of the revised document is not agreeable to your client, we should consider petitioning the court to set aside his jury waiver, and proceed to trial on first degree murder.

Dougherty outlined the agreement to the trial court on April 5, 1985, at the hearing wherein Saylor waived his right to a jury trial:

DOUGHERTY: Well, I think perhaps we should make a record on the fact that this waiver of [the] jury is in response to an agreement which the State has made with . . . Saylor and his counsel that we will file an Amended Information alleging the crime of murder in the second

degree. That the counsel for the State and the counsel for . . . Saylor will submit a stipulated set of facts to the court. In essence, what we will do, we will have a stipulated trial so that in the event at the conclusion of that stipulated trial, . . . Saylor is found guilty, he can preserve his rights to appeal and question the court's ruling on the motion to suppress.

I guess that is in the nature of some type of promise that he has received as a result, that has been induced to waive his right to jury trial.

Saylor's counsel showed approval for this statement of the agreement.

Saylor argues that, because the prosecutor did not agree to a contested stipulated trial, he "exploited" Saylor's counsel into accepting "false testimony and other incriminating evidence." Brief for appellant at 81.

First, Saylor apparently bases this argument on a position that he did not have to agree to any conditions in order for the State to reduce the charge. In other words, he contends that the State was locked into the charge of second degree murder and that therefore, Saylor would still have the opportunity to participate in a contested trial on that charge. Dougherty's letter reflects otherwise. If Saylor wanted the benefit of avoiding the first degree murder charge, then he had to agree to sufficient facts to support a conviction for second degree murder. Naturally, such facts would be incriminating. Moreover, Dougherty's letter also allowed Saylor the option of withdrawing his waiver and proceeding to trial on the charge of first degree murder. Clearly, the parties attempted to compromise in order to achieve the mutually beneficial resolution of a serious criminal matter. Notably, Saylor does not argue that trial counsel was ineffective in getting the charge reduced from first degree murder to second degree murder. Nor does he explain how his counsel could have forced the State to reduce the charge to second degree murder and still agree to a contested stipulated trial.

Second, Saylor contends that his counsel were forced into allowing Dougherty to set forth false evidence in the stipulation. Again, this overlooks the benefit of the reduced charge. But even ignoring that fact, Saylor has not shown there was false evidence presented in 1985 nor that this allegedly false evidence has the significance that Saylor attributes to it.

For example, Saylor points to the fact that Dougherty did not include each person in the chain of custody of the pillow tested by Roy. However, Dougherty expressly denied attempting to mislead the district court and testified that he deliberately phrased the stipulation to show that the pillow went from the property room to the intended recipient without including the entire chain of custody. Instead, the parties stipulated that all items of evidence discussed and offered had an adequate chain of custody. There is no support for Saylor's contention that the portion of the stipulation pertaining to the pillow was somehow false or deceptive.

Additionally, Saylor claims that the stipulation attributed false testimony to Kutsch, the pathologist. As the district court noted, the stipulation set forth that Kutsch's deposition opinion differed from the opinion relied upon by the stipulated facts.

Saylor's brief is replete with examples such as these, but they do not reflect falsified evidence. Rather, they involve issues of fact and credibility, which were the province of the district court to resolve. See *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015) (conflicts in evidence, credibility of witnesses, explanations, and weight of evidence presented are within fact finder's province for disposition). As such, Saylor's contentions in this regard do not support his claims of prosecutorial misconduct or ineffective assistance of counsel.

Turning again to the benefit of the reduced charge, the record does not support Saylor's assertion that his counsel was forced into accepting the stipulation. Instead, the evidence shows that Saylor's counsel carried out a calculated strategy by agreeing to it. Rather than contest every issue, the record

reflects that Healey preserved the ruling on the motion to suppress for appeal and at the same time ensured that Saylor did not face the death penalty, which, based on the record and the timing of Saylor's trial, was a realistic possibility. See § 29-2523(1)(c). See, also, *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984); *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982); *State v. Peery*, 199 Neb. 656, 261 N.W.2d 95 (1977); *State v. Simants*, 197 Neb. 549, 250 N.W.2d 881 (1977), *disapproved on other grounds, State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990); *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977). Thus, contrary to Saylor's assigned error, the district court did not err in determining that extinguishing the possibility of the death penalty was a major benefit of the agreement.

Even with a stipulated trial, Healey still was able to contest the evidence on Saylor's behalf. For example, Healey argued to the court, at trial, that the matter was submitted with stipulated facts but that this left "to the court the question of whether the stipulated matter proves [Saylor's] guilt and if so, what offense." Healey further showed his strategy in the following exchange after Dougherty offered the stipulation, exhibit 8 of the 1985 trial:

HEALEY: Your Honor, I indicated that I had no objection to the reception of Exhibit 8 and that is true. I would just note in an abundance of caution that Exhibit 8, however, does contain with it some objections to some of the material offered by the State as reflected therein and I do not waive those objections and will speak to those.

THE COURT: Perhaps I should ask . . . Saylor whether he has read and is familiar with Exhibit 8, the stipulation?

[Saylor]: Yes, sir, Your Honor, I have.

THE COURT: And you have signed that stipulation?

[Saylor]: I did sign it, Your Honor. I agree with the admissibility of most of the things there. However,

obviously not on the things considered in the motion to suppress . . . .

THE COURT: But you agree with the stipulation and you have signed the stipulation?

[Saylor]: Yes, sir.

THE COURT: As I said, Exhibit 8 is received.

. . . DOUGHERTY: At this time, I would offer what has been marked as Exhibit No. 6 [the recordings of Saylor's conversation with Timm and Menard] as the stipulation Exhibit 8 reflects.

. . . HEALEY: We have no foundational objections but we do, as reflected by Exhibit 8 and for the record, do at this time renew the motion to suppress previously filed and briefed and argued to the court in relation to Exhibit 6. We at this time, as the Exhibit 8 states, object to the introduction of the recording for the reason stated in that motion to suppress filing 19, but which will be marked as an exhibit in this proceeding for each and every reason set forth in the exhibit.

We further contend and allege and object that those tapes and the conversations reflected therein were not in fact or in law, voluntary but were the product of unlawful and unconstitutional deprivation of [Saylor] in the respect previously argued and briefed and as stated in Exhibit No. 6.

We have the further agreement as Exhibit 8 states that the evidentiary record which was made on the motions to suppress that evidentiary record having been made I believe on February 6, 1985, shall be incorporated by reference in these proceedings and shall be considered to be the basis for the ruling of the court upon the motion to suppress renewal and the objections that [Saylor] is making at this time.

We would ask that the court affirmatively direct that the evidence presented at that motion to suppress hearing be considered to be before the court at this proceeding

for the purpose of the ruling on the Exhibit No. 6, in
relation to [Saylor's] objection and motion to suppress,
on the grounds stated.

The record shows that Saylor's counsel acted strategically
and not only preserved the issues in regard to the motion
to suppress, but also contested other evidence. Contrary to
Saylor's contention, we find that his counsel performed effec-
tively in this respect.

Saylor also cites *United States v. Cronic*, 466 U.S. 648, 104
S. Ct. 2039, 80 L. Ed. 2d 657 (1984), for the proposition that
prejudice will be presumed where counsel fails to subject the
prosecution's case to meaningful testing. *Cronic* further states:
"'The very premise of our adversary system of criminal jus-
tice is that partisan advocacy on both sides of a case will best
promote the ultimate objective that the guilty be convicted
and the innocent go free.'" 466 U.S. at 655, quoting *Herring
v. New York*, 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593
(1975). Saylor alleges, "Omitting exculpatory evidence, espe-
cially as to whether Lena['s] death was natural, was presump-
tively prejudicial." Brief for appellant at 28. Saylor's author-
ity does not fit the situation at hand, where a stipulated trial
was conducted. Again, trial counsel's strategy to focus on the
motion to suppress and avoid the death penalty does not auto-
matically equate to "fail[ing] to subject the prosecution's case
to meaningful adversarial testing." *United States v. Cronic*,
466 U.S. at 659.

Saylor claims that he received ineffective assistance of
counsel in several other ways: (a) failing to seek withdrawal
of his jury waiver, (b) prematurely allowing Saylor's jury
waiver, (c) failing to include exculpatory medical evidence
regarding the victim in the trial stipulation, (d) failing to
object to portions of the stipulation and to insist on eviden-
tiary rulings, (e) failing to investigate the change in Kutsch's
testimony, (f) failing to consult an independent medical expert,
(g) failing to require production of medical evidence, (h) fail-
ing to inquire as to the consequences of taking or not taking

prescribed medications, and (i) failing to interview or depose stipulation witnesses. However, these contentions either rely on the assumption that the parties participated in a contested trial or imply that a stipulated trial was not a prudent strategy. We have concluded that Saylor's counsel was not ineffective by agreeing to a stipulated trial in an attempt to reduce the first degree murder charge, avoid the possibility of the death penalty, and preserve Saylor's motions for appeal. Therefore, we decline to consider the foregoing contentions because they depend on a contested trial format that did not occur and because the stipulated trial that did occur did not result from ineffective assistance of counsel.

## Right to Speedy Trial

Saylor contends that the district court erred in rejecting his claims that his right to speedy trial was violated and that trial counsel was ineffective for not raising that issue. Neb. Rev. Stat. § 29-1207 (Cum. Supp. 2014), then as now, requires discharge of a defendant whose case has not been tried within 6 months after the filing of the information. Therefore, to determine whether trial counsel should have raised the issue, we must review the record. The bill of exceptions reflects that although Saylor offered and the district court received the clerk's transcript from the original trial, only a photocopy of the front page is before us. Otherwise, the clerk's transcript is not part of the record.

[5,6] The party appealing has the responsibility of including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review. Neb. Rev. Stat. § 25-1140 (Reissue 2008); *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001); *State v. Biernacki*, 237 Neb. 215, 465 N.W.2d 732 (1991); *State v. Schaneman*, 235 Neb. 655, 456 N.W.2d 764 (1990); *State v. Isikoff*, 223 Neb. 679, 392 N.W.2d 783 (1986). A bill of exceptions is the only vehicle for bringing evidence before the Supreme Court; evidence which is not made part of the bill of

exceptions may not be considered. *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983); *State v. Gingrich*, 211 Neb. 786, 320 N.W.2d 445 (1982). Without the benefit of a proper record, we will not consider this alleged error.

## Prosecutorial Misconduct

[7] Saylor claims that the district court erred in finding no prosecutorial misconduct. Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015).

Saylor contends that he "proved" Dougherty misrepresented Kutsch's testimony. Brief for appellant at 47. The stipulation acknowledged Kutch's 1984 deposition opinion that Lena's cause of death was respiratory arrest but that it was indeterminate as to whether such respiratory arrest resulted from natural causes or from smothering. But the stipulation states that at the time of the stipulation, dated May 10, 1985, Kutsch had the opinion that "[a]lthough [Lena] could have died of natural causes, the cause of her respiratory arrest was most probably smothering." This last statement was supported by a letter from Kutsch to Dougherty dated May 6, 1985.

Saylor argues this was false testimony, because in Kutsch's deposition in 2014, he stated that he could not say that the cause of death was "most probably smothering." However, Kutsch further testified that he could not recall the letter in 1985, because 30 years had passed. The district court found it should give more weight to Kutsch's statements in 1985 than to his testimony 30 years later.

Saylor contends that Dougherty failed to turn over all discovery. However, the record establishes otherwise. Jacobs did not recall having the impression that she had requested evidence she did not receive. Saylor failed to supply evidence that the requested discovery was not provided.

Saylor also claims the Lancaster County Attorney's office had continued contact with Dougherty after that office had recused itself. His argument is based upon timesheets from Dougherty and testimony by Lacey. However, Dougherty advised that he contacted the Lancaster County Attorney's office with questions about the death penalty issues and in regard to potential witnesses. And Lacey confirmed that the county attorney's office had contact with Dougherty concerning moving Saylor and Sapp, witnesses for their cases, and the death qualification issue. The district court concluded that normal contact had occurred and that Saylor had not proved this claim.

[8] Like many of his other arguments, Saylor bases his allegations concerning prosecutorial misconduct on determinations of credibility. However, as we have already observed, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *State v. Lee*, 290 Neb. 601, 861 N.W.2d 393 (2015).

Additionally, Saylor asserts and assigns that the prosecutor committed misconduct by coercing him into accepting the stipulation. We have thoroughly examined this issue above, and we reject Saylor's assertion.

Based on the record before us, we conclude that the district court was not clearly erroneous in finding no prosecutorial misconduct.

## STIPULATED BENCH TRIAL

[9] Saylor assigns that the district court failed to inquire regarding his right to confrontation before proceeding with the stipulated trial, which he argues was tantamount to a guilty plea. As pointed out by the district court, we settled this issue in *State v. Howard*, 282 Neb. 352, 371-72, 803 N.W.2d 450, 467-68 (2011):

> A stipulation entered by a defendant can be tantamount to a guilty plea. But this is true only when the defendant

stipulates either to his or her guilt or to the sufficiency of
the evidence. [The defendant] did not do so. Instead, he
merely stipulated to the admission of certain evidence,
and then the district court determined whether that evi-
dence was sufficient to convict him of the crime charged.
Simply stipulating to the admission of evidence is not
tantamount to a guilty plea. Moreover, it is clear from the
record that [the defendant] preserved all of the defenses
and arguments he raised in his motion to suppress. Where
the defendant has presented or preserved a defense, such
as the suppression of evidence, a stipulated bench trial is
not tantamount to a guilty plea.

(Citations omitted.)

In the instant matter, Saylor did not enter a plea of guilty
or no contest. Instead, he preserved his defense for appeal
and affirmatively agreed to the stipulated facts. In addition,
as discussed, he had the opportunity to proceed to trial on
the first degree murder charge if he disagreed with the stipu-
lation. The district court's findings on this issue were not
clearly erroneous.

## Prejudice

[10] Saylor contends that the district court erred in finding
that he had not shown how he was prejudiced by the per-
formance of his trial counsel. To show prejudice, the defend-
ant must demonstrate a reasonable probability that but for
counsel's deficient performance, the result of the proceeding
would have been different. A reasonable probability does not
require that it be more likely than not that the deficient per-
formance altered the outcome of the case; rather, the defendant
must show a probability sufficient to undermine confidence in
the outcome. *State v. Armstrong,* 290 Neb. 991, 863 N.W.2d
449 (2015). As previously discussed, Saylor is now second-
guessing a strategy to which he agreed to in 1985 in order
to avoid the possibility of the death penalty. Saylor agreed to
the waiver of jury trial and, at a later hearing, agreed to the

stipulated facts on the record and even advised the district court as to what facts he contested. What Saylor has shown is that 30 years later, he and new counsel would have taken a different approach. Saylor cannot show prejudice as to the stipulated trial, because his alternative was a trial on the first degree murder charge. No such trial occurred, therefore, at best, he speculates he would have been found not guilty on a charge of first degree murder.

Accordingly, we find no merit to any of Saylor's assigned errors pertaining to prejudice.

### EXPERT ATTORNEY TESTIMONY

[11] Saylor contends that the district court erred in denying his request that an expert attorney testify at the postconviction hearing regarding allegedly deficient performance by counsel. We reject this contention. As we have concluded, the record shows that Saylor's counsel was not ineffective. Moreover, while Saylor's present counsel and/or his expert counsel would have chosen a different strategy, i.e., go to trial on a first degree murder charge, they use hindsight to evaluate the approach of Saylor's attorneys. The effectiveness of counsel, however, is not to be judged by hindsight. *State v. Bartlett*, 210 Neb. 886, 317 N.W.2d 102 (1982); *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977); *State v. Phillips*, 186 Neb. 547, 184 N.W.2d 639 (1971).

### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

[12,13] Saylor assigns that his appellate counsel, who were the same as his trial counsel, provided ineffective assistance by failing to raise claims of ineffectiveness of trial counsel on appeal. However, claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented the defendant at trial are premature and will not be addressed on direct appeal. *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009). Moreover, when analyzing a claim of ineffective

assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015). We have already concluded that Saylor did not receive ineffective assistance of trial counsel as he alleges. Therefore, we find no merit to this assigned error.

### Motion to Reopen
### Postconviction Hearing

Saylor assigns that the district court erred in overruling the pro se "Verified Motion to Reopen Case and Present Additional Evidence" he filed after the close of evidence. The motion simply set forth additional evidence to challenge the evidence at the stipulated trial. Again, the parties participated in a stipulated trial and not a contested trial. Accordingly, the district court did not err in denying the motion to reopen, because the additional evidence amounted to a repetition of his postconviction claims.

### CONCLUSION

For the reasons set forth above, we hold that the district court did not err in denying Saylor's motion for postconviction relief.

AFFIRMED.

Heavican, C.J., and Connolly and Stacy, JJ., not participating.