IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. PURDY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

WILLIAM J. PURDY, APPELLANT.


Filed July 3, 2017.    No. A-15-923.


Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

This is a postconviction appeal. In 2003, William J. Purdy was convicted by a jury of second degree murder and use of a firearm in the commission of a felony. As a result of his convictions, he was sentenced to a term of 30 to 35 years in prison for the murder conviction and to a mandatory consecutive term of 5 to 10 years' imprisonment for the use of a firearm conviction. On direct appeal, this court affirmed Purdy's convictions. *State v. Purdy*, 12 Neb. App. xxii (No. A-03-1363, Sept. 30, 2004).

Purdy now appeals the decision of the district court for Douglas County which denied his motion for postconviction relief after an evidentiary hearing. In this appeal, Purdy alleges a variety of errors concerning the court's denial of relief related to his assertions of ineffective assistance of his trial counsel, ineffective assistance of his appellate counsel, and ineffective assistance of his initial postconviction counsel. We find no merit to Purdy's assertions on appeal, and we affirm.

## II. BACKGROUND

The events giving rise to this case occurred in August 2002, when Juan Juarez was shot and killed near the intersection of Florence Boulevard and Read Street in Omaha, Nebraska. Just prior to the shooting, Juarez was a passenger in a "Chevy Malibu" which was being driven by one of his acquaintances. When the driver of the Malibu waited at a stop sign to make a left turn at the intersection, an older blue Monte Carlo passed by the Malibu and the front seat passenger of the Monte Carlo made a hand gesture. Another passenger in Juarez's vehicle responded with the same or similar hand gesture, and the Monte Carlo then pulled over and stopped in an area north of the Florence and Read intersection. As the Malibu began to make a left turn, Juarez exited the vehicle. The driver of Juarez's vehicle then pulled over and parked the car just south of the intersection at Read Street. Two other passengers also left the Malibu and, following Juarez, began to approach the Monte Carlo. The front seat passenger departed the Monte Carlo, gunshots sounded, and Juarez fell to the ground face down after being struck by a bullet.

On August 8 at 12:40 a.m., a doctor provided emergency room medical treatment to Juarez for a gunshot wound to the back of the head; but Juarez subsequently died as a result of that wound. The bullet had entered the back left portion of Juarez' head and traveled in a path towards the front right portion of the head. Crime lab technicians with the Omaha Police Department processed the scene of the crime and found three 9 mm spent shell casings, but no gun.

An information filed December 17, 2002, charged Purdy with murder in the second degree and use of a deadly weapon to commit a felony, arising out of the events in August 2002. On July 8, 2003, a jury trial commenced.

The State's key witness at trial was Purdy's cousin, Christopher Chavez. Chavez testified that on the night in question, he was the driver of the Monte Carlo. Seated in the front passenger seat of the car was Purdy. Chavez testified that when he drove through the intersection of Florence Boulevard and Read Street, he thought he heard someone from the Malibu yell "Will." Purdy asked Chavez if someone had called his name and Chavez told Purdy that it sounded like it. Purdy then told Chavez to stop the car. Chavez testified that four or five people jumped out of the Malibu, that one person from the Malibu threw something, and that Chavez then heard gunshots. Chavez testified that Juarez was the person that threw something. Chavez testified that he looked out the back window of the Monte Carlo, saw Purdy shooting and that when Purdy re-entered the Monte Carlo, Purdy said he thought he might have shot somebody. Chavez testified that on a prior occasion Purdy had shown him the gun used in the shooting.

Chavez turned himself in approximately 30 days after the shooting after seeing on television that the police wanted to question him. He made a deal with the prosecution that charges against him would be dismissed if he testified truthfully against Purdy.

Ultimately, the jury convicted Purdy of both second degree murder and use of a deadly weapon to commit a felony. As we discussed above, Purdy appealed from his convictions. By the time of this appeal, Purdy had different counsel than his trial attorney. In his direct appeal, Purdy alleged that the district court erred in failing to find the second degree murder statute unconstitutional and in failing to grant his motion for a new trial. We affirmed Purdy's convictions. Specifically, we found that Purdy had failed to properly preserve for appellate review his allegation

that the second degree murder statute was unconstitutional. We also found that the district court did not err in denying his motion for new trial.

In February 2012, Purdy filed a motion seeking postconviction relief. After the district court appointed Purdy with counsel for the postconviction proceedings, amendments to Purdy's motion for postconviction relief were filed in October 2012 and in April 2013. Throughout Purdy's initial motion and the various amendments to that motion, Purdy raised a variety of allegations of ineffective assistance of his trial counsel and ineffective assistance of his appellate counsel. Purdy also alleged that he was actually innocent of the crimes for which he was convicted.

The district court granted Purdy an evidentiary hearing on his motion for postconviction relief. At this hearing, Purdy offered into evidence, among other things, the deposition testimony of both his trial counsel and his appellate counsel.

On September 3, 2015, the district court entered a lengthy order denying Purdy's motion for postconviction relief. The court ultimately concluded that Purdy had "failed to establish [that] a constitutional right ha[d] been infringed or violated."

This appeal followed. More details concerning Purdy's specific allegations will be set forth as necessary below.

## III. ASSIGNMENTS OF ERROR

On appeal, Purdy alleges, restated and consolidated, that the district court erred in denying his claims that (1) his trial counsel provided ineffective assistance of counsel in a variety of ways; (2) his appellate counsel provided ineffective assistance of counsel both during his direct appeal and prior to the direct appeal, when appellate counsel represented Purdy during the sentencing phase of the criminal proceedings; and (3) his initial postconviction counsel provided ineffective assistance of counsel in a variety of ways.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law. *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016).

With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Saylor*, *supra*.

## V. ANALYSIS

### 1. Ineffective Assistance of Trial Counsel

In his brief on appeal, Purdy alleges numerous allegations of ineffective assistance of trial counsel. These assertions include, that trial counsel was ineffective in (1) failing to object to the State's false assertions about the evidence which was to be presented at trial during its opening statement; (2) failing to make a motion for a mistrial after the jury observed Purdy wearing handcuffs; (3) failing to investigate Purdy's "mental incapacities" and to request a competency evaluation; (4) failing to object to certain jury instructions and to request additional jury

instructions; (5) failing to object to the State endorsing multiple witnesses close in time to the scheduled trial and then filing motions to continue to depose the late-endorsed witnesses; and (6) failing to object to or file a motion to dismiss the "defective" information filed by the State. See brief for appellant at 13-28.

All of Purdy's allegations that he received ineffective assistance of trial counsel are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct appeal. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). As we mentioned above, Purdy was represented by different counsel than his trial attorney on direct appeal. And, while he did raise one allegation of ineffective assistance of trial counsel in his direct appeal, specifically, that his trial counsel was ineffective for failing to call certain witnesses to testify, he did not raise any of his most recent allegations of ineffective assistance of trial counsel. Because he did not raise these issues in his direct appeal, he is now procedurally barred from raising the issues. Accordingly, we conclude that the district court did not err in denying Purdy postconviction relief based on his allegations of ineffective assistance of trial counsel.

### 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his brief on appeal, Purdy alleges numerous allegations of ineffective assistance of appellate counsel. These assertions include that appellate counsel was ineffective during the direct appeal because counsel failed to "assign trial counsel's ineffective assistance on direct appeal." Brief for appellant at 30. Purdy then refers back to all of the ineffective assistance of trial counsel claims we discussed in the preceding section. Purdy also asserts that appellate counsel was ineffective during the direct appeal because he failed to properly preserve for appellate review a challenge to the constitutionality of the second degree murder statute and he failed to assign as error the district court's decision to overrule Purdy's motion for new trial and the court's giving of improper jury instructions. Additionally, Purdy alleges that appellate counsel was ineffective prior to the direct appeal when counsel represented him during the sentencing phase of the criminal proceedings. Specifically, Purdy asserts that counsel was ineffective in failing to timely file a motion in arrest of judgment.

We first address Purdy's allegations that his appellate counsel was ineffective when he failed to assign as error, on direct appeal, that trial counsel provided ineffective assistance in a variety of respects. When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011). Appellate counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. When, as here, the case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). See *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

Under the *Strickland* test, the defendant has the burden to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010). The two prongs of the ineffective assistance of counsel

test, deficient performance and prejudice, may be addressed in either order. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011).

When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McGhee*, *supra*.

We now turn to Purdy's specific allegations of ineffective assistance of appellate counsel.

(a) Prosecutorial Misconduct During Opening Statement

During the State's opening statement, the prosecutor outlined for the jury the anticipated testimony of the first police officer who arrived on the scene of the shooting. During that outline, the prosecutor stated:

[The officer is] going to lay out the scene for you: the way the street lights were, the fact that no other guns were found at the scene except the one described with [Purdy].

There was no motion for a mistrial at this time, nor did Purdy's trial counsel make any objections concerning the prosecutor's statement that Purdy's gun was found at the scene. However, during trial counsel's opening statement, he refuted the prosecutor's statement that there was a gun found at the scene of the shooting. Counsel told the jury, "there's no gun." During the trial, three different police officers testified that there was no gun found at the scene of the shooting.

In his motion for postconviction relief and in this appeal, Purdy alleges that the prosecutor committed prosecutorial misconduct when he told the jury during his opening statement that there was a gun recovered from the scene of the shooting, when, in fact, no gun was ever found nor was any gun admitted into evidence. Specifically, Purdy argues that the prosecutor's statement was "misleading and untrue" and that it was "reversible error, because it compromised Purdy's right to a fair trial by undermining confidence in the outcome of the trial." Brief for appellant at 14. Purdy alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in not objecting to or making a motion for a mistrial on the basis of prosecutorial misconduct.

In the district court's order denying Purdy's motion for postconviction relief, it found that the prosecutor's comment during opening statements that a gun was found at the scene of the shooting did not constitute prosecutorial misconduct and that, as a result, Purdy cannot show he was prejudiced by appellate counsel's failure to raise this issue on appeal. Upon our review, we agree with the decision of the trial court that inclusion of this issue in Purdy's direct appeal would not have changed the result of that appeal and that, as such, Purdy cannot show he was prejudiced by appellate counsel's failure to raise the issue.

In determining whether appellate counsel was ineffective in not sufficiently raising on direct appeal an alleged instance of prosecutorial misconduct or trial counsel's failure to object to that instance of prosecutorial misconduct, we necessarily consider whether the alleged instance would have supported a finding of prosecutorial misconduct. See *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). Prosecutors have a duty to conduct criminal trials in a manner that

provides the accused with a fair and impartial trial. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). Whether alleged prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. See *id.*

In his opening statement, the prosecutor did suggest to the jury that a gun was found at the scene of the shooting and that this gun could be tied to Purdy. Based on the testimony of three different police officers during the trial, it is clear that the prosecutor's statements about the gun were incorrect. No gun was found at the scene. In fact, the gun used in the shooting was apparently never located. However, "a criminal conviction is not to be lightly over-turned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *State v. Iromuanya*, *supra* (quoting United *States v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 84 L.Ed.2d 1 (1985)). In addition, "not every variance between [a prosecutor's] advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given" and the remarks are not crucial to the State's case. *State v. Iromuanya*, *supra* (quoting *Frazier v. Cupp*, 394 U.S. 731, 736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)).

The prosecutor's remarks about the gun in his opening statement were followed by a lengthy trial. During that trial, numerous witnesses testified that no gun was found at the scene of the shooting and, no gun was offered into evidence. The prosecutor did not ever again indicate that a gun had been found. The crucial issue in the trial was proving the shooter's identity. The State's key piece of evidence in this regard was the testimony of Purdy's cousin who was with Purdy at the time of the shooting. As such, evidence of whether the gun used in the shooting was ever located was a peripheral issue in proving Purdy's guilt. Moreover, prior to the jury beginning deliberations, the district court instructed the jurors that the statements and arguments of the lawyers for the State and for Purdy were not to be considered as evidence.

We agree with the district court that there was no prosecutorial misconduct during opening statements. The prosecutor's comment about a gun being found at the scene was an isolated statement which was corrected during the course of the trial. There was no indication that the prosecutor was intentionally misleading the jury; rather, the statement appeared to be an innocent mistake in the recitation of the evidence that was to be presented. In addition, the jury was specifically instructed that the prosecutor's opening statement was not evidence and there is no indication that jurors were in any way influenced by the prosecutor's mistake.

Because the State did not commit prosecutorial misconduct, Purdy cannot demonstrate that he was prejudiced by his trial counsel's failure to object or to make a motion for a mistrial. As such, Purdy cannot demonstrate that he was prejudiced by appellate counsel's failure to raise on direct appeal trial counsel's failure to object or to make a motion for a mistrial. Had appellate counsel raised this issue on appeal, his assertions would have been unsuccessful.

(b) Motion for Mistrial After Purdy Observed in Handcuffs

After a brief morning recess on the second day of Purdy's trial, he was brought into the courtroom after both the judge and the jury were already present and seated. The record reflects the following exchange between the trial judge and trial counsel:

THE COURT: This is the resumption of . . . State of Nebraska v. William J. Purdy. The parties are present, the defendant is present, and the jury is seated.

[TRIAL COUNSEL]: Judge, actually, Mr. Purdy isn't present.

THE COURT: I guess I didn't notice. We'll wait just a minute I guess.

The record then reflects that Purdy entered the courtroom and the proceedings resumed. There was no motion for a mistrial at this time, nor did Purdy's trial counsel make any objections concerning Purdy's absence from the courtroom or his return to the courtroom.

In his motion for postconviction relief and in this appeal, Purdy alleges that when he was brought into the courtroom after the jury was seated, he was still wearing handcuffs and that, as a result, the jury was prejudiced by its observation of him wearing such restraints. Brief for appellant at 16-17. Purdy alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in not making a motion for a mistrial on the basis that the jury observed Purdy in handcuffs during the trial. In support of Purdy's allegation, he offered into evidence the deposition testimony of both his cousin and his mother.

Purdy's cousin testified that during one of the last two days of the trial, he observed Purdy to be brought into the courtroom when the jury was already seated. When Purdy was brought into the courtroom, his hands were handcuffed behind his back in full view of the jurors. Purdy's cousin also testified that during this time, the judge was not in the courtroom.

Purdy's mother testified that during one of the first two days of trial, she observed Purdy to come into the courtroom with his hands handcuffed behind his back when the jury was already present. Purdy's mother also testified that she was sequestered for the majority of the trial.

During trial counsel's deposition testimony, he indicated that he had no "independent[]" recollection of Purdy being brought into the courtroom after the judge and jury were already present and seated. In addition, trial counsel testified that he did not recall ever moving for a mistrial during Purdy's trial.

In the district court's order denying Purdy's motion for postconviction relief, it found that it was not clear from the record that Purdy was in handcuffs when he was brought into the courtroom after the jury was present and seated. The court indicated that Purdy "failed to prove otherwise solely from the testimony of family members." In addition, the court noted, "Even if the jury made such an observation, the Court finds [Purdy] suffered no prejudice . . . and therefore, counsel was not ineffective." Upon our review, we agree with the decision of the district court that inclusion of this issue in Purdy's direct appeal would not have changed the result of that appeal and that, as such, Purdy cannot show he was prejudiced by appellate counsel's failure to raise the issue.

The general rule is that a defendant should be free from shackles unless they are necessary to prevent violence or escape. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013); *State v. Heathman*, 224 Neb. 19, 395 N.W.2d 538 (1986). This is because it is central to the right to a fair trial, guaranteed by the 6th and 14th Amendments, that one accused of a crime is entitled to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody or other circumstances not adduced as proof at trial. *State v. Dixon*, *supra*. However, as the Supreme Court has previously stated:

- 7 -

[A]pplication of the general rule must be tempered with some measure of common sense. Jurors are aware that the defendant "did not arrive there by choice or happenstance." It is not possible to "eliminate from trial procedures every reminder that the State has chosen to marshal its resources against a defendant to punish him for allegedly criminal conduct."

*State v. Dixon*, *supra* (quoting *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *abrogated on other grounds*, *State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009)).

In this case, the district court found that Purdy failed to adequately prove that the jury observed him in handcuffs during the trial. We do not find this factual finding to be clearly erroneous. The record from Purdy's trial does not provide any indication that Purdy was in handcuffs when he was brought into the courtroom after the jury was seated. In addition, the testimony of Purdy's family members is inadequate to demonstrate that any juror actually saw Purdy in handcuffs. While both Purdy's cousin and Purdy's mother testified that during the trial Purdy was brought into the courtroom in handcuffs while the jury was present, Purdy did not offer the testimony of any of the jurors about whether they actually observed Purdy in handcuffs. Moreover, Purdy's family members provided somewhat conflicting testimony about when Purdy was brought into the courtroom in handcuffs. Purdy's mother was apparently sequestered after opening statements and Purdy's cousin only attended the last two days of trial. As such, they cannot be recalling the same incident. Purdy's cousin testified that during the incident he observed, the judge was not present in the courtroom. This testimony conflicts with the trial record.

Because Purdy failed to adequately demonstrate that the jurors observed him wearing handcuffs during the trial, he cannot demonstrate that he was prejudiced by his trial counsel's failure to make a motion for a mistrial. As such, Purdy cannot demonstrate that he was prejudiced by appellate counsel's failure to raise on direct appeal trial counsel's failure to make a motion for a mistrial. Had appellate counsel raised this issue on appeal, his assertions would have been unsuccessful.

(c) Competence to Stand Trial

Neither prior to nor during the trial, did trial counsel ever raise the issue of Purdy's competence to stand trial. In his motion for postconviction relief and in this appeal, Purdy alleges that his trial counsel was ineffective for failing to request a competency evaluation or a hearing when counsel was aware of evidence that placed Purdy's competency in question. Purdy further alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in not requesting a competency evaluation or hearing. In support of Purdy's allegation, he offered into evidence the deposition testimony of his mother. Purdy's mother testified that she told Purdy's trial counsel "several times" that Purdy needed a psychological evaluation. She indicated that she told trial counsel that Purdy had seen a psychiatrist when he was younger and that he had mental health problems. Purdy's mother also testified that she told Purdy's appellate counsel that she questioned Purdy's competency.

In contrast to Purdy's mother's testimony, trial counsel testified in his deposition that he did not recall Purdy having any competency issues nor did he recall Purdy's mother ever requesting that Purdy have a psychological evaluation. Counsel testified that Purdy was "difficult," but that Purdy appeared to understand everything counsel said to him. Similarly, Purdy's appellate counsel

testified in his deposition that he did not believe that Purdy was incapable of understanding what they discussed. In addition, he believed Purdy to be capable of assisting in his defense. Appellate counsel did acknowledge that Purdy's mother discussed her concern about Purdy's competence with him, but he indicated that he never received any useful reports or evaluations confirming her concerns.

In the district court's order denying Purdy's motion for postconviction relief, it found that Purdy did not sufficiently prove that he was incompetent to stand trial and that, as a result, "counsel [was] not ineffective for failing to create useless pretrial challenges." The court also specifically indicated, "the record from trial counsel's testimony that Defendant was competent and this Court's own observations during the trial and from the record refute this claim." Upon our review, we cannot say that the district court erred in finding that Purdy failed to adequately prove his incompetence or that Purdy failed to demonstrate his trial counsel was ineffective in this regard. Accordingly, we conclude that inclusion of this issue in Purdy's direct appeal would not have changed the result of that appeal and that, as such, Purdy cannot show he was prejudiced by appellate counsel's failure to raise the issue.

In order to demonstrate prejudice from counsel's failure to investigate competency and for failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). Counsel is not ineffective for failing "to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." *Id.* (quoting *People v. Shelburne*, 104 Cal. App.3d 737, 744, 163 Cal. Rptr. 767, 772 (1980)). If trial counsel cannot be ineffective in failing to raise the issue of defendant's competency at trial when there is no evidence that the defendant was, in fact, incompetent, then appellate counsel cannot be ineffective in failing to raise trial counsel's ineffectiveness in this regard.

At the evidentiary hearing, there was conflicting evidence presented concerning whether Purdy was incompetent to stand trial. Purdy's mother testified that Purdy had mental health problems, that he had previously been under the care of a psychiatrist, and that he should have been evaluated for competency. In contrast to Purdy's mother's testimony, both trial counsel and appellate counsel testified that they did not have any concerns about Purdy's competency. Purdy appeared to understand what was happening and participated in his defense. Purdy did not offer any evidence from a medical professional that supported his claim that he was incompetent to stand trial. Given the evidence presented at the evidentiary hearing, the district court's determination that Purdy failed to adequately demonstrate his incompetence was not clearly erroneous. In fact, we note that given the district court's involvement in the original criminal proceedings, the court was in a unique position to evaluate Purdy's postconviction claim that he was incompetent to stand trial.

Upon our review, we conclude that Purdy failed to sufficiently demonstrate that he was incompetent to stand trial. As such, his trial counsel was not ineffective in failing to raise this issue to the trial court and his appellate counsel was not ineffective in failing to argue, on direct appeal, trial counsel's ineffectiveness in this regard. Had appellate counsel raised this issue on appeal, his assertions would have been unsuccessful.

(d) Jury Instructions

In Purdy's brief on appeal, he alleges that his trial counsel was ineffective for failing to object to the jury instructions given and for failing to request additional jury instructions. Specifically, Purdy alleges that trial counsel failed to object to the instruction which listed the elements of second degree murder; the instruction which ordered the jury to deliberate whether Purdy committed second degree murder before considering whether he committed manslaughter; the instruction which defined "malice," but did not define "without malice;" and the verdict form which failed to include a possible finding of "Not Guilty by reason of Self-Defense." Brief for appellant at 22-23. Purdy alleges that trial counsel also failed to request a "Cautionary Instruction" regarding accomplice testimony. Brief for appellant at 26.

Also in his brief on appeal, Purdy alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in failing to object to the jury instructions and in failing to request additional jury instructions as delineated above. However, in his motion for postconviction relief, Purdy generally alleged that appellate counsel "failed to assign as error, Trial Counsel's ineffectiveness in failing to object to the jury instructions." Purdy did not specifically assert what objections trial counsel should have made and what arguments appellate counsel should have raised about trial counsel's ineffectiveness on direct appeal. More importantly, in the motion for postconviction relief, Purdy failed to include specific allegations explaining why any objection to the jury instructions would have been successful or how he was prejudiced by his appellate counsel's failure to raise trial counsel's ineffectiveness in his direct appeal.

A general allegation that trial counsel failed to object, without any kind of assertion as to what grounds supported any objection is insufficient to preserve a claim that counsel performed deficiently. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). Similarly, a conclusory allegation that appellate counsel was ineffective in failing to raise on direct appeal trial counsel's general failure to object, does not preserve a claim that appellate counsel performed deficiently. Thus, in his motion for postconviction relief, Purdy failed to sufficiently allege that appellate counsel was ineffective in failing to assign as error trial counsel's failure to object to the jury instructions. Purdy cannot correct the insufficiency in his motion for postconviction relief by raising more specific allegations of appellate counsel's ineffectiveness for the first time on appeal. We decline to consider Purdy's allegations that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to make specific objections to the jury instructions. See *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015) (in a postconviction motion, an appellate court will not consider as an assignment of error a claim that was not presented to the district court).

However, Purdy did sufficiently allege that his appellate counsel was ineffective in failing to raise on direct appeal trial counsel's ineffectiveness in failing to request a cautionary instruction regarding accomplice testimony. We address the merits of this allegation.

The record refutes Purdy's allegation of ineffective assistance of trial counsel in this regard. The jury instructions provided to the jury did, in fact, include an instruction concerning accomplice testimony. That jury instruction read as follows:

> There has been testimony from . . . a claimed accomplice of the defendant. You should closely examine his testimony for any possible motive he might have to testify

falsely. You should hesitate to convict the defendant if you decide that [this witness] testified falsely about an important matter and that there is no other evidence to support his testimony.

In any event, you should convict the defendant only if the evidence satisfies you beyond a reasonable doubt of his guilt.

Because trial counsel was not ineffective in failing to request a cautionary instruction about accomplice testimony, appellate counsel was not ineffective in failing to raise on direct appeal trial counsel's ineffectiveness.

### (e) Late Endorsement of Witnesses by State and Subsequent Motion to Continue

In his motion for postconviction relief and in this appeal, Purdy alleges that his trial counsel was ineffective for failing to object to the State "endorsing . . . witnesses fewer than thirty (30) days prior to trial." Brief for appellant at 24. Purdy further alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in not objecting to the late endorsement of witnesses. There is nothing in our record to support Purdy's allegations. The record does not contain any filing from the State requesting to endorse additional witnesses and, as a result, there is nothing in the record to demonstrate any such filing was made fewer than thirty days prior to the scheduled trial, as Purdy contends. There is also nothing in our record to demonstrate whether trial counsel did or did not object to the State's request to endorse additional witnesses. During the deposition of Purdy's trial counsel, he testified that he had no "independent recollection" concerning the timing of the State's request to endorse additional witnesses.

It is incumbent on the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed. *State v. Russell*, 239 Neb. 979, 479 N.W.2d 798 (1992). Purdy has failed to present a record to support his allegation that the State requested to endorse additional witnesses too close in time to trial and that his trial counsel did not object to the State's request. Accordingly, we are unable to review his resultant assertion that appellate counsel was ineffective in failing to raise on direct appeal his trial counsel's ineffectiveness in not objecting to the late endorsement of witnesses.

In his motion for postconviction relief and in this appeal, Purdy also alleges that his trial counsel was ineffective for filing various motions to continue trial in order to have time to depose the additional witnesses endorsed by the State. As a part of this allegation, Purdy asserts that his trial counsel violated his right to a speedy trial when he asked that trial be continued. Purdy further alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in filing the motions to continue and in violating his right to a speedy trial. Again, there is nothing in our record to support Purdy's allegations. The record does not contain any motions to continue filed by trial counsel. During the deposition of Purdy's trial counsel, he testified that he remembered that the trial was continued; however, he indicated that he had no "independent recollection" of the circumstances surrounding the continuance. As we stated above, because Purdy has failed to present a record to support his allegation that trial counsel filed various motions to continue the trial, we are unable to review his resultant assertion that

appellate counsel was ineffective in failing to raise on direct appeal his trial counsel's ineffectiveness in filing the motions to continue.

## (f) Amendment to Information

In his brief on appeal, Purdy alleges that trial counsel was ineffective for failing to object to the State's motion to amend the Information in order to correct the date on which the shooting occurred. Purdy also alleges that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffectiveness in failing to object. However, in his motion for postconviction relief, Purdy did not raise appellate counsel's ineffectiveness for failing to raise on direct appeal his trial counsel's ineffectiveness in failing to object to the amended information. Accordingly, this issue was not presented to the district court, and we will not consider it for the first time on appeal. See *State v. Sellers*, *supra,* (in a postconviction motion, an appellate court will not consider as an assignment of error a claim that was not presented to the district court).

As we mentioned above, after the trial was completed, Purdy obtained new counsel, who ultimately acted as Purdy's appellate counsel, but also acted as his trial counsel during the sentencing phase of the proceedings. Purdy alleges that while his appellate counsel was acting as his trial counsel, he provided ineffective assistance. In addition, Purdy alleges that counsel was ineffective for failing to properly appeal issues other than trial counsel's ineffectiveness. We address these arguments here.

## (g) Failure to Properly Preserve Argument Concerning
## Constitutionality of Second Degree Murder Statute

In Purdy's direct appeal, appellate counsel argued that the second degree murder statute, Neb. Rev. Stat. § 28-304 (Reissue 1995) was unconstitutional. However, this court determined that this claim was not properly preserved for appellate review because Purdy's appellate counsel failed to strictly comply with Neb. Ct. R. of Prac. 9E (rev. 2000), which provided:

> A party presenting a case involving the federal or state constitutionality of a statute must file and serve a separate written notice thereof with the Supreme Court Clerk at the time of filing such party's brief. If the Attorney General is not already a party to an action where the constitutionality of the statute is in issue, a copy of the brief assigning unconstitutionality must be served on the Attorney General within 5 days of the filing of the brief with the Supreme Court Clerk; proof of such service shall be filed with the Supreme Court Clerk.

Purdy's appellate counsel failed to file and serve the separate written notice required by Rule 9E. In his motion for postconviction relief and in this appeal, Purdy claims his appellate counsel was ineffective because he failed to properly preserve his constitutional argument for appellate review. In the district court's order denying Purdy postconviction relief, it found that appellate counsel was deficient in failing to comply with Rule 9E. However, the district court also found that Purdy did not prove that the result of the appeal would have been different had appellate counsel properly raised a constitutional challenge to the second degree murder statute. The court stated, "In fact, [Purdy] has failed to even set forth what specific argument would have been made

on direct appeal to establish the statute is unconstitutional, much less any evidence or law proving it would have been successful." Upon our review, we agree with the decision of the district court.

Purdy's appellate counsel did provide deficient assistance when he failed to properly preserve Purdy's constitutional claim for appellate review. However, in order to successfully demonstrate a claim of ineffective assistance of counsel which would warrant relief, Purdy must demonstrate more than just counsel's deficient performance. He must also demonstrate that he was prejudiced by that performance. See *State v. McGhee*, *supra*. In order to demonstrate prejudice, Purdy must show that if appellate counsel had properly preserved the constitutional claim for appellate review, that there is a reasonable probability that it would have changed the result of the appeal. See *State v. Timmens*, *supra*.

In his motion for postconviction relief and in this appeal, Purdy failed to allege any facts to demonstrate he was prejudiced by appellate counsel's failure to properly preserve the constitutional claim. Specifically, Purdy does not allege why the second degree murder statute was unconstitutional, nor does he provide any evidence or case law which would indicate his constitutional claim would have been successful had it been properly preserved. Accordingly, Purdy did not show he was prejudiced in any way by counsel's deficient performance.

### (h) Failure to Timely File Motion in Arrest of Judgment and Failure to Appeal District Court's Denial of Motion

The day before Purdy's sentencing hearing, appellate counsel, acting as trial counsel, filed a motion in arrest of judgment. This motion essentially alleged that the second degree murder statute was unconstitutional and that, as a result, Purdy should not have been convicted of the charged crimes. At the sentencing hearing, appellate counsel told the court, "I had filed recently, and I apologize to the Court for the late filing, I filed a motion in arrest of judgment and just got that filed yesterday afternoon." Appellate counsel then asked that the court rule on the motion prior to imposing a sentence. When the court asked whether appellate counsel wished "to be heard on that motion," counsel referred the court to the motion and to the "memorandum in support" of that motion which counsel had provided to the court. The State then briefly argued that the second degree murder statute was not unconstitutional and that the motion was "superfluous in that an issue of unconstitutionality can be brought at any time so long as there is a final disposition . . . ." The court then stated, "Defendant's motion in arrest of judgment has been heard and it is summarily denied." Appellate counsel did not raise the district court's denial of the motion in arrest of judgment on direct appeal.

In his motion for postconviction relief and in this appeal, Purdy alleges that appellate counsel provided ineffective assistance by failing to timely file the motion in arrest of judgment and by failing "to present the issue on direct appeal." Brief for appellant at 29. We conclude that Purdy's assertions do not have merit.

Assuming without deciding that appellate counsel's filing of the motion in arrest of judgment one day prior to the sentencing hearing was not "timely," there is no evidence that the timing of the filing prejudiced Purdy in any way. The district court gave appellate counsel the opportunity to argue the merits of the motion. Appellate counsel referenced the court to the memorandum in support of the motion, which we note is not included in our record. Then, the State argued the merits of the motion. Neither the State nor the district court indicated that it

considered the motion to be untimely, and, while the district court ultimately denied the motion, it appeared to do so on the merits. As such, even if appellate counsel was deficient in the timing of the filing of the motion in arrest of judgment, Purdy has failed to demonstrate that such deficiency prejudiced him in any way.

Purdy has also failed to demonstrate that he was prejudiced by appellate counsel's failure to raise on direct appeal the district court's denial of the motion in arrest of judgment. The basis of his motion was the alleged unconstitutionality of the second degree murder statute. As we explained above, in order for Purdy to demonstrate prejudice from appellate counsel's failure to raise this issue on direct appeal, he must show that if appellate counsel had raised the issue, that there is a reasonable probability that it would have changed the result of the appeal. See *State v. Timmens*, *supra*. Again, though, Purdy failed to allege in his postconviction motion and in this appeal why the second degree murder statute was unconstitutional. In addition, he failed to provide any evidence or case law which would indicate his constitutional claim would have been successful. Accordingly, Purdy did not show he was prejudiced in any way by counsel's failure to raise on direct appeal the district court's denial of the motion in arrest of judgment.

### (i) Failure to Assign as Error on Appeal District Court's Overruling of Motion for New Trial

After the conclusion of Purdy's trial, his appellate counsel, acting as trial counsel, filed a motion for new trial. In that motion, counsel alleged that a new trial was warranted because there were "irregularities in the proceedings," including, that there was not sufficient evidence to sustain the verdict; that Purdy was not capable of assisting in his own defense; and that the State subpoenaed Purdy's mother as a trial witness for the sole reason of keeping Purdy away from her during the trial. A hearing was held on the motion for new trial and, after the hearing, the district court entered an order overruling the motion. In the order, the court indicated that Purdy presented insufficient evidence to prove the allegations in his motion for new trial.

In his motion for postconviction relief and in this appeal, Purdy alleges that his appellate counsel was ineffective in failing to raise on direct appeal the district court's decision to overrule the motion for new trial. Specifically, Purdy alleges that appellate counsel was ineffective for failing to raise on direct appeal "that the District Court abused its discretion by overruling Purdy's motion for new trial summarily, that is, without addressing the merits of the motion."

The record refutes Purdy's allegation. First, there is no indication that the district court failed to consider the merits of the motion for new trial. In fact, in the district court's order, it addressed the merits of each of the assertions Purdy raised in the motion for new trial. The district court discussed the evidence presented at the hearing on the motion for new trial and determined that, based on this evidence, the motion should be overruled. Second, as we discussed above, appellate counsel did raise on direct appeal the district court's decision to overrule the motion for new trial. In that appeal, this court reviewed the merits of the motion for new trial and determined that the district court did not err in overruling the motion. Accordingly, Purdy has failed to demonstrate that his appellate counsel acted deficiently or that he was prejudiced by counsel's actions in any way.

- 14 -

### (j) Failure to Assign as Error on Appeal
### Improper Jury Instructions

At trial, the district court instructed the jury that it must convict Purdy of second degree murder if the State proved beyond a reasonable doubt that Purdy had killed Juarez intentionally, but without premeditation. The court further instructed the jury that only if the State failed to prove one of those elements could the jury go on to consider whether Purdy had committed the "less-included offense of manslaughter." In his motion for postconviction relief and in this appeal, Purdy alleges that his appellate counsel provided ineffective assistance when he failed to argue on direct appeal that the district court improperly instructed the jury regarding the distinction between second degree murder and manslaughter and regarding the manner the jury was to deliberate whether Purdy was guilty of second degree murder or manslaughter. Upon our review, we conclude that Purdy's assertion lacks merit because he cannot demonstrate he was prejudiced by counsel's failure to raise this issue in his direct appeal.

We first note that, as we discussed above, trial counsel did not object to the jury instructions during trial and failure to timely object to jury instructions prohibits a party from contending on appeal that the instructions were erroneous. See *State v. Williams*, 269 Neb. 917, 697 N.W.2d 273 (2005). As a result, on direct appeal, we could have only reviewed the jury instructions for plain error either because appellate counsel requested such a review or because we noted such error on our own. See *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003) ("Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice."). We find no plain error in the jury instructions provided by the district court. As such, even if counsel had raised this issue in Purdy's direct appeal, it would not have changed the outcome of the appeal.

At the time of Purdy's trial, in 2003, the jury instructions provided by the district court regarding the distinction between second degree murder and manslaughter and regarding the manner the jury was to deliberate whether Purdy was guilty of second degree murder or manslaughter were correct. See *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994), *overruled, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), and *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011). The Supreme Court had explained that an intentional killing could never be sudden quarrel manslaughter. *Id*. As such, the district court's instructions regarding the distinction between second degree murder and manslaughter were a correct statement of law. In addition, the court's instruction that the jury first consider whether Purdy was guilty of second degree murder before considering whether he was guilty of manslaughter was appropriate.

Purdy's assertion that the jury instructions provided by the district court were an incorrect statement of the law is based on the Supreme Court's decisions in *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011) and *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). In those cases, the Supreme Court decided that to convict a person of manslaughter, the State must prove that the defendant committed an intentional killing without malice upon a sudden quarrel. Thus, the court decided that an intentional killing could be sudden quarrel manslaughter. The court went on to find that because of this change to what constitutes manslaughter, a change to the jury instructions was necessary:

> [T]he [previous pattern] step instruction required the jury to convict on second degree murder if it found that [the defendant] killed [the victim] intentionally, but it did not permit the jury to consider the alternative possibility that the killing was intentional but provoked by a sudden quarrel, and therefore constituted manslaughter.

*State v. Smith*, 282 Neb. at 734, 806 N.W.2d at 394.

Essentially, the Supreme Court's decisions in *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011) and *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), disapproved of the instructions given by the district court during Purdy's trial. However, as we noted above, those two cases were not decided until 2011 and 2012, at least 8 years after the conclusion of Purdy's trial. The Supreme Court has previously indicated that the new rule of law enunciated in these two cases is not to be applied retroactively except in cases which were not yet final at the time of their decisions. See *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013). Because Purdy's conviction became final years prior to the change in the law, the district court did not err in its instructions to the jury. Because the district court did not err in giving the jury instructions, Purdy cannot show he was prejudiced by appellate counsel's failure to raise this issue on direct appeal. Purdy's assertion must fail.

### 3. INEFFECTIVE ASSISTANCE OF POSTCONVICTION COUNSEL

After Purdy filed his pro se motion for postconviction relief in the district court, the court granted his request to appoint him with counsel to represent him during the postconviction proceedings. Appointed counsel then represented Purdy through the time of the evidentiary hearing. After the evidentiary hearing, the district court appointed different counsel to represent Purdy in this appeal. In his brief on appeal, Purdy alleges that his initial postconviction counsel provided ineffective assistance by (1) failing to present sufficient evidence to prove that the jury observed him wearing handcuffs during the trial; (2) failing to present additional information to demonstrate Purdy's incompetence at the time of his trial; (3) failing to adequately plead the issue of appellate counsel's failure to preserve a constitutional challenge to the second degree murder statute; and (4) failing to present sufficient evidence to support his claim that the district court erred in denying his motion for new trial. Brief for appellant at 41-43.

There is no constitutional guarantee of effective assistance of counsel in a postconviction action and therefore no claim for ineffective assistance of postconviction counsel. *State v. Deckard*, 272 Neb. 410, 722 N.W.2d 55 (2006); *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005); *State v. Dandridge*, 264 Neb. 707, 651 N.W.2d 567 (2002). As such, any claim made by Purdy with respect to ineffective assistance of his postconviction counsel is without merit.

## VI. CONCLUSION

We find no merit to Purdy's numerous assertions on appeal. As set forth above, many of the assertions are not properly before us in this postconviction setting, and we find that Purdy has not demonstrated an entitlement to relief on the remaining assertions. Accordingly, we affirm.

AFFIRMED.